WILLIAM CARRON *vs.* Den ex dem. MOSES B. MARTIN.

1. Where a tax is assessed upon land for opening or widening a street, and the land is sold for such tax, to support the title acquired by such sale, it must appear that the proceedings of the proper authorities in opening or widening the street were authorized by the law.

2. The Supreme Court has a right to review the proceedings of corporations and all other inferior tribunals that do acts affecting the rights

and property of individuals, which are judicial or *quasi* judicial in their nature, and may do this as well when those proceedings are wholly void for want of jurisdiction, as when they are illegal in consequence of some material irregularity.

3. The proceedings of municipal corporations should be kept strictly within the limits assigned to them by the statutes under which they act, and if they do not keep within those limits, their proceedings not only are liable to reversal by *certiorari*, but are held void and insufficient to support a title professing to be founded on them.

In error to the Supreme Court.

The facts in this case, and the opinions delivered in the Supreme Court, appear in the report of the case, at page 230 of this volume.

*W. Pennington* and *J. P. Bradley*, for plaintiff in error.

*C. Parker* and *F. T. Frelinghuysen*, for defendant.

The opinion of the court was delivered by

ELMER, J. The important question in this case is, whether the proceedings of the common council of the city of Newark, in opening the street for which the assessment was made, are void for want of a proper application of the land-owners for that purpose, so that the sale of land made to raise the sum assessed thereon is also void, and confers no title on the purchaser. The 30th section of the charter enacts that it shall be lawful for the common council to lay out and open streets, roads, highways and alleys, and to cause any street, road, &c., already laid out, to be vacated, opened, altered or widened; provided no street shall be altered or widened as aforesaid, except on the application in writing by three-fourths of all the owners of lands lying on said road. It is found, by the special verdict, that the street laid out and opened was a street, road or highway then already laid out, opened and used in said city, and became such street, road or highway before the passage of the charter, the same having been laid out and defined by a survey made in 1753, a copy whereof is annexed. This survey is certainly vague, and is probably so uncertain that it would

not be possible accurately to locate the road described after the lapse of a century; but if, as the jury find, it was actually opened and used as laid out originally, it comes within the description of a street already laid out when the charter was granted.

It also appears, by the special verdict, that the owners of lands and real estate necessary to be taken for the street laid out and[3] opened, and called Quarry street, agreed to take a certain compensation for their lands, which was authorized to be paid, and it may be presumed was paid; and hence it was insisted, by the counsel for the defendants in error, that it sufficiently appears that not merely three-fourths, but all the owners of land lying on said road, did apply for and consent to the altering or widening of said road. But if it be admitted that an acceptance of compensation by the owners can be regarded as equivalent to a petition in writing, it does not appear that the owners of land necessary to be taken for the street comprised three-fourths of all the owners of land lying on said street. Many of the owners of lands lying on said street may have owned no land necessary to be taken in laying it out and opening it. And, besides, the council did not profess to proceed under the power given to them to alter and widen an existing street, but under the power to lay out and open a new street.

Assuming then, as we must, that the council, either in ignorance of the fact that a street had been there before laid out and opened, or, regardless of that fact, did proceed to lay out and open a new street where one existed before the granting of the charter, the question is, whether their proceedings, although for this reason irregular and liable to be set aside upon a direct proceeding by way of *certiorari*, are so far available as to be good in a collateral proceeding like the present. The argument relied on to sustain them was, that they were of a judicial nature, and therefore, however illegal, remain in force

Carron v. Martin.

until set aside by a direct judgment. This depends upon the further question, whether the want of an application to widen the street made the subsequent proceedings *coram non judice* and void ; in other words, was a written application necessary to give the council jurisdiction in the case, for if they had no jurisdiction, it is admitted that the whole proceedings were void.

Much of the discussion in this court turned upon the question whether the act of the council, in laying and opening this street, was judicial in its character. That a proceeding of this kind does not necessarily belong to the judicial department of the government, as defined by the constitution of this state, must be admitted, otherwise it could not be exercised by any other persons than those who belong to it, as provided for in that instrument. It is probably best designated as *quasi* judicial, or judicial in its nature, that is judicial in such a sense that the tribunal intrusted with its exercise is subject to the control of the Supreme Court, as commissioners to settle the boundary line between counties were held to be in the case of *The State* v. *Coleman*, 1 *Green* 98. But the determination of this question does not settle the difficulty, for an act in the largest sense judicial is totally void when attempted to be exercised by a court, or other tribunal, having no jurisdiction in the case.

There is a marked and well-settled distinction on this subject between the acts of courts having a general jurisdiction, and those of tribunals having only a limited jurisdiction, and empowered to act in a special case. In the case of *Turner* v. *Beale*, 2 *Sal.* 523, it was held that a plea setting up a discharge of a poor prisoner by the Quarter Sessions must set forth that he petitioned for a discharge, without which the court had no jurisdiction; and this case has been repeatedly recognized as law. *Den* v. *Hammell*, 3 *Harr.* 73 ; *Price* v. *Bray*, 1 *Zab.* 13 ; *Ladbroke* v. *James*, *Willes* 199 ; *Service* v. *Heermance*, 1 *Johns. R.* 91 ; *Stephens* v. *Ely*, 6 *Hill* 609. In the case of *Den* v. *Ham-*

*mell*, the question was, whether it was necessary in eject-
ment to show that an order of the Orphans' Court to sell
land was founded on an account of the personal estate
under oath, before the administrators' deed could be
given in evidence. Judge Ford, who delivered the opin-
ion of the court, held that the Orphans' Court did not
come within the description of a tribunal having a limited
and special authority, but had a jurisdiction for the gen-
eral administration of justice within certain great depart-
ments, and therefore the same presumption that its pro-
ceedings were regularly applied, as in the case of proceed-
ings by the Supreme Court. But he admitted, we think
correctly, that tribunals with special powers for adjudicat-
ing in particular cases, under the various names of com-
missioners, surveyors, appraisers, committees, directors,
overeers, and the like, little or in nowise relating to the
general administration of justice, whose modes of pro-
ceeding are prescribed in the statutes by which they are
created, are of a different class, and unless their proceed-
ings, on the face of them, show a compliance with the di-
rections required by the statute under which they act, it
never could be known whether they acted within their ju-
risdiction or exceeded it. If the record of a road duly re-
corded by the order of a Court of Common Pleas would be
valid in any collateral proceeding, although it did not ap-
pear that a petition had been presented signed by the requi-
site number of freeholders, as counsel insisted, and which it
is not intended to affirm or deny, it would be because this
proceeding by the Court of Common Pleas is to be regarded
in the same light as an order of the Orphans' Court for the
sale of land.

It was urged, for the defendant in error in this case,
that the common council had a general power to lay out all
streets and to widen streets already laid out; and being a
permanent body, and required by the 32d section of the
charter to ratify the assessment upon those benefited,
subject to an appeal to the Supreme Court, these proceed-

ings ought to have the same effect as those of the Court of Common Pleas in road cases, or of the Orphans' Court when ordering land to be sold. But it must be remarked that it is only the assessment of the commissioners, as ratified by the council, from which there is an appeal, in order that the amount to be assessed may be ascertained by a jury, and that the appeal has no effect upon the order of the council to open a street. The thirtieth section, in express terms, confines the power of the council to alter or widen a street to the case when an application shall be made in writing by three-fourths of all the owners of lands lying on said road. This, we think, is clearly the case of a tribunal having a limited and special power to proceed in the manner prescribed in the act, and only in that manner.

The surrogates in the State of New York hold courts and act judicially; but being courts of inferior and special jurisdiction, it is held that when an order to sell lands is produced as evidence in an action of ejectment, it must appear that a petition was presented, accompanied by a proper account, so as to show that the surrogate had jurisdiction. *Jackson* v. *Robinson*, 4 *Wend.* 436; *Jackson* v. *Crawfords*, 12 *Wend.* 533. In case of *Sharp* v. *Spier*, 4 *Hill* 76, which was an ejectment to recover land sold for payment of an assessment for making a pump in the village of Brooklyn, under an act which authorized the trustees, on the application in writing of the persons owning property, to divide the village into pump and well districts, and a petition was shown, but no evidence was produced that the signatures were genuine, or that they were owners of property, it was held that the trustees acted at their peril; that they could not make the occasion by resolving that it existed; and that corporations and their officers, where they interfere with the rights of individuals, and especially when they attempt to divest and transfer the title to real estate, must show that the very case has arisen in which they were authorized to proceed.

Carron v. Martin.

The opinion delivered in that case suggests that there is little, if anything, of a judicial nature in the proceedings of corporations to take lands, either by way of assessments or for public use; it is the mere execution of a power. In the cases of *The People* v. *The Mayor, &c., of New York*, 2 *Hill* 9, and of *Mount Morris Square*, 2 *Hill* 14, the same court seem to hold that such proceedings are not so far judicial as to be reviewed upon *certiorari*. Whether they are or are not, is not material to the question before this court. Admitting them to be in some sense judicial, they are not proceedings of a court of general jurisdiction to which the principle *omnia præsumuntur rite esse acta* can be applied, and therefore every fact necessary to give jurisdiction must affirmatively appear to give them validity. In the case of *Doughty* v. *Hope*, 3 *Denio* 594, it was held, by the Court of Appeals, that the ratification by the common council of the city of New York did not render valid a void assessment; that to make a title there must be a regular assessment duly ratified; and it being proved that one of the assessors authorized to act was not consulted, and did not act, that the whole proceeding was void.

There can be no doubt that, according to the long-established practice in New Jersey, the Supreme Court has a right to review the proceedings of corporations and all other inferior tribunals who do acts affecting the rights and property of individuals, which are judicial or *quasi* judicial in their nature; and may do this as well when those proceedings are wholly void for want of any power or jurisdiction in the tribunal to act, as when they are illegal in consequence of some material irregularity. The judgment of a justice of the peace in a case of replevin, should he erroneously proceed in such a case, would undoubtedly be wholly void, but it might also be set aside by means of a *certiorari*. In our judgment, public policy requires that the proceedings of our numerous municipal corporations should be kept strictly within the limits assigned to them by the statutes authorizing them, and if

they appear not to come within those limits, they should not only be liable to reversal by *certiorari*, but also be held void and insufficient to support a title professing to be founded on them. We are therefore of opinion that the judgment must be reversed.

*For affirmance*—None.

*For reversal*—Judges ELMER, HAINES, RYERSON, ARROW-SMITH, CORNELISON, RISLEY, VALENTINE, and WOOD.

CITED *in State* v. *City of Perth Amboy,* 5 *Dutch.* 260; *Nixon* v. *Ruple,* 1 *Vr.* 600; *State* v. *Brown,* 2 *Vr.* 357; *Phillips* v. *City of Hudson,* 2 *Vr.* 149; *State* v. *Mayor of Orange,* 3 *Vr.* 54; *State* v. *Town of Union,* 3 *Vr.* 345; *State* v. *Jersey City,* 5 *Vr.* 398; *State* v. *Inhabitants of Trenton,* 7 *Vr.* 501; *Paret* v. *Bayonne,* 10 *Vr.* 564; *Morris Canal and Banking Co.* v. *Jersey City,* 1 *Beas.* 257; *Dinsmore* v. *Westcott,* 10 *C. E. Gr.* 475.