CHARLES W. GREEN, ADMINISTRATOR OF REBECCA A. GREEN, DECEASED, ET AL., PLAINTIFFS BELOW AND DEFENDANTS IN ERROR, v. SUSAN E. HERITAGE ET AL., DEFENDANTS BELOW AND PLAINTIFFS IN ERROR.

Argued March 20 and 21, 1900—Decided June 18, 1900.

The legislature cannot confer upon Circuit Courts power to review the judgment of District Courts in matters of law which may be reviewed by the Supreme Court by a writ of *certiorari.* It is immaterial by what name the proceeding to review is styled; the *certiorari* power in such case cannot be conferred upon the Circuit Courts.

On error to the Supreme Court. For opinion of the Supreme Court, see 34 *Vroom* 455.

For the plaintiffs, *William L. Clark.*

For the defendants, *McEwan & McEwan.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an action on contract instituted in the District Court of the city of Jersey City, where judgment was rendered for the plaintiffs in October, 1898.

To review this judgment the defendant took, what is termed in the District Court act of 1898, an appeal to the Circuit Court of the county of Hudson.

That act provides that "if either party in any such action or proceeding shall be dissatisfied with the determination or direction of said court in point of law, or upon the admission or rejection of evidence, such parties may appeal from the same to the Circuit Court of the county wherein said District Court is held." *Pamph. L.* 1898, *p.* 630, § 206.

Section 210 of the same act provides that "on hearing of said appeal, said Circuit Court shall either affirm or reverse said judgment of the District Court, or may order judgment to be entered for either party, as the case may be, and may

make such order with reference to the dismissal and costs of the said appeal as said court may think proper."

The last-mentioned section was amended by the act of March 24th, 1899, but the amendment in nowise affects the question involved in this case. *Pamph. L.* 1899, *p.* 560, § 14.

The Circuit Court affirmed the judgment of the District Court and thereupon the defendants sued out a writ of error to the Supreme Court where the judgment of the Circuit Court was affirmed.

This judgment of the Supreme Court is now in this court for review, and the only question to be discussed is whether the legislature can confer upon Circuit Courts power to review the judgment of District Courts in matters of law which may be reviewed by the Supreme Court by a writ of *certiorari*.

There can be no question that, although the proceedings by which the judgment of the District Court was removed into the Circuit Court is styled in the District Court act of 1898 " an appeal," the power conferred is identical with that which is exercised by the Supreme Court through its prerogative writ of *certiorari*. The power granted is the *certiorari* power and must be dealt with as such. *McCullough* v. *Essex Circuit Court,* 30 *Vroom* 103.

The question now presented was most ably and elaborately discussed by the late Chief Justice Beasley as long ago as 1865, in *Dufford* v. *Decue,* 2 *Vroom* 302, and the conclusion reached has never been challenged, and I am confident cannot be successfully controverted.

After showing that, prior to the adoption of the constitution of 1844, our Supreme Court was empowered to have cognizance of pleas civil, criminal and mixed, as fully and amply to all intents and purposes whatsoever as the Courts of Queen's Bench, Common Pleas and Exchequer within her Majesty's kingdom of England, he says: "That at the time of the formation of the constitution of 1844 the ordinary common law original jurisdiction of the Supreme Court was shared by the respective county Circuit Courts and to a defi-

nite extent by the Courts of Common Pleas ; but the appellate and extraordinary jurisdiction with which the Supreme Court, as the successor of the King's Bench, had been originally vested, remained centered still exclusively in that tribunal, with the single anomaly that the act constituting the Circuit Court had conferred upon them the power to review suits originating in the Justices' Courts by the instrumentality of the writ of *certiorari*."

After declaring that no change in this respect was effected by the constitution of 1844, he further says : " That it was never supposed that either the Common Pleas or the county Circuits were possessed of any more than a concurrent common law jurisdiction with the Supreme Court within the limits of their respective counties in the ordinary line of actions, *inter partes.* It is certain that no greater power than this was ever claimed for them.   In a defined measure they each shared, practically, with the Supreme Court a portion of its ordinary jurisdiction ; and this was all, for, so far as is known, no attempt was ever made to bring before either of those tribunals any matter which was not embraced within the limit of this power.   Indeed, the express authorization of the Circuit Court to use, in an enumerated class of cases, the writ of *certiorari* [that is, *certiorari* to Justices' Courts] excludes, in a very conclusive manner, all claim to the exercise of analogous prerogatives, and likewise evinces that the several terms conferring authority upon those courts did not impart to them anything more than a portion of what I have called the ordinary jurisdiction of the Supreme Court.   I think, therefore, it is clear that at the time the new constitution was framed these general terms, so often used in conferring on the local courts a partial jurisdiction co-extensive with that of the Supreme Court, had acquired a definite and settled meaning, and that such meaning was that the inferior courts should have a concurrent cognizance over actions arising within the county in the usual course of law between parties.   And in this sense, in my opinion, were the words used in the constitution of this state, and this construction

seems to me much fortified when we remember that the dis-
tinction between the ordinary and prerogative jurisdiction of
the Supreme Court has always been clearly and sharply de-
fined.   In England the ordinary jurisdiction of the King's
Bench was shared in a great measure by the Common Pleas
and in a lesser degree by some of the other courts.   But the
authority which was exercised by means of the various writs
of *mandamus, quo warranto, certiorari* and others of a simi-
lar character belonged to this high tribunal alone.   *   *   *

"All these great powers were, by the ordinance of our first
provincial governor, transferred to the Supreme Court, and
were exclusively exercised by that tribunal from that time to
the era of the new constitution ; and it was these extraordi-
nary powers which belonged to it as a Supreme Court, which
were not, as I think, intended to be granted to the Circuit
Courts by that instrument.   *   *   *   Besides, it is obvious
that the same course of reasoning which will clothe the
county courts with jurisdiction in the class of cases above
referred to will also clothe them with appellate jurisdiction
by writ of error to the Common Pleas, for if concurrent jur-
isdiction with the Supreme Court implies, and is equivalent
to co-ordinate and co-extensive jurisdiction, these Circuit
Courts cannot consistently be denied this power of review."

These views so forcibly and clearly expressed by Chief
Justice Beasley were re-affirmed in the case of *Flanagan* v.
*Plainfield,* 15 *Vroom* 118, where the Supreme Court said :
" That the distinguishing feature of the King's Bench was
the authority which it alone exercised by means of the writs
of *certiorari, mandamus* and *quo warranto.*   That our con-
stitution was framed to perpetuate in our Supreme Court
the same ample and exclusive power is clearly shown by the
opinion of the Chief Justice in Dufford *v.* Decue.   The
Supreme Court is the sole depositary of these prerogative
writs.   The single exception to the rule is mentioned by the
Chief Justice, viz., suits originating in Justices' Courts.   The
reason for the exception is that at the time of the formation
of the constitution of 1844, the act constituting the Circuit

Courts had conferred upon them the power to review by *certiorari* suits originating in Justices' Courts. This constitution makes the Supreme Court unassailable by legislation."

The strictness with which the constitutional prerogatives of the Supreme Court are guarded and preserved appears conspicuously in the able opinion delivered by Judge Adams in this court, in *Flanigan* v. *Guggenheim Smelting Co.*, reported in 34 *Vroom* 647.

It is not possible, therefore, without ignoring the well-defined distinction between the ordinary jurisdiction of the Supreme Court and its appellate and extraordinary jurisdiction, to find even the slightest basis upon which to vest the right of the legislature to confer any *certiorari* power upon the Circuit Court other than it exercised at the adoption of the constitution of 1844.

The distinction is too marked to be overlooked or disregarded by the judicial mind. To recognize the validity of the legislation in question would also involve the refusal to apply the maxim "*expressio unius exclusio alterius.*"

*Reilly* v. *Second District Court of Newark*, 34 *Vroom* 541, supports the legislation now challenged upon the suggestion "that the suits that may be brought in the District Court are such as might be instituted in the Circuit Court, and if there instituted the Supreme Court could not review the decisions of that tribunal by *certiorari;* nor at all, if the litigant chose to carry his grievance to the Court of Errors. This shows that the Supreme Court has no exclusive jurisdiction over the questions involved."

The obvious fallacy of this reasoning is that it fails wholly to distinguish between ordinary and appellate jurisdiction.

The distinction is so sharply drawn in *Dufford* v. *Decue* that it is unnecessary to amplify argument upon this point.

When a suit is instituted in the District Court the right of the Supreme Court attaches through its appellate and extraordinary jurisdiction to supervise the proceedings of the inferior court.

In the language of Chief Justice Beasley, this appellate and

extraordinary jurisdiction, exercised by the writ of *certiorari*, centres exclusively in the Supreme Court, and it cannot be taken away or impaired by adverse legislation.

It is the inferior tribunal and not alone the cause of action over which exclusive jurisdiction by the writ of *certiorari* and the other prerogative writs is committed to the Supreme Court. Those writs cannot be appropriated and used by any other court except in the single instance before mentioned which is characterized by Chief Justice Beasley as anomalous. A writ of error may at the option of the litigant be taken directly from the Circuit Court to the Court of Errors, thereby passing the Supreme Court. To the extent that the power of the Circuit Court is amplified in this respect, what Chief Justice Beasley terms an anomaly is produced, and necessarily the exclusive jurisdiction of the Supreme Court is contracted and impaired.

The legislation of 1898 is therefore pronounced to be unconstitutional and void.

The Supreme Court passed upon the merits of the controversy in this case and affirmed the judgment of the Circuit Court. We express no opinion upon the merits of the case.

The judgment of the Circuit Court is a nullity, because it had no jurisdiction of the case, and the judgment of the Supreme Court affirming such judgment is erroneous. The judgment of the Supreme Court should have been a reversal of the judgment of the Circuit Court because the Circuit Court had no jurisdiction. That will leave the judgment of the District Court to stand as if no appeal had been taken to the Circuit Court.

*For affirmance*—DIXON.    1.

*For reversal*—DEPUE (CHIEF JUSTICE), VAN SYCKEL, GUMMERE, LUDLOW, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.    8.