CHARLES HOHL, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF READINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND READINGTON TOWNSHIP BOARD OF ADJUSTMENT, DEFENDANT.

Argued February 20, 1962—Decided May 7, 1962.

*Mr. Richard H. Thiele, Jr.,* argued the cause for the defendant-appellant (*Messrs. Wharton, Stewart & Davis,* attorneys; *Mr. Richard H. Thiele, Jr.,* on the brief).

*Mr. Leonard Adler* argued the cause for the plaintiff-respondent (*Messrs. Adler & Winick,* attorneys; *Mr. Leonard Adler,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendant Readington Township appeals from a judgment of the Superior Court, Law Division, declaring the Township's zoning ordinance "invalid insofar as it prohibits a trailer park or mobile home court on premises owned by the plaintiff," Charles Hohl. We certified the cause while it was pending in the Appellate Division.

In 1952 plaintiff bought a three-acre tract of land on the northerly side of U. S. Route 22 in Readington Township, Hunterdon County. The tract has a frontage of 136 feet on the highway, a depth of about 700 feet and a width of 234 feet at the rear. Since acquiring ownership, plaintiff has unsuccessfully sought a permit from the Township to operate a trailer park upon this land. His latest effort began in April 1960 when he applied for a permit under the 1955 zoning ordinance which allowed trailer parks in the highway business zone. The first 300 feet of plaintiff's land in from U. S. Route 22 were in that zone, the rear portion being in a residential zone. Among the uses

permitted in the highway business zone were: "Business establishments which serve transient clientele * * * [including] Motels, tourist homes and cabins * * * trailer courts * * *" None of these uses was permitted in residential zones. Since his property did not comply with certain requirements of the zoning ordinance, the plaintiff applied to the Board of Adjustment for variances. The Board denied the variances necessary for plaintiff to establish a trailer park. As a result he instituted this action in lieu of prerogative writ for a judgment compelling the Board to grant the necessary variances and directing the township to issue him an appropriate license. On February 10, 1961, before the trial was held, the township amended its zoning ordinance to delete "trailer courts" from the list of uses permitted within the highway business zone and added "trailer camps or trailer courts" to the list of uses prohibited in that zone. Since trailer courts were not permitted within the other zones, this amendment had the effect of excluding them throughout the township.

Plaintiff supplemented his complaint to challenge the zoning change of February 10, 1961, contending it was "arbitrary, capricious and unlawful in that the characteristics of said Township do not warrant such an amendment, nor do the characteristics of the surrounding property of plaintiff warrant such an amendment." During the course of the trial all of the counts of the complaint as supplemented, except those pertaining to the amendment of February 10, 1961, were either abandoned by the plaintiff or dismissed by the court and are not involved in this appeal.

At the trial there was testimony describing Readington Township in general and the uses surrounding plaintiff's land in particular. In area the township is the largest municipality in Hunterdon County, comprising 47.8 square miles. Its present population is about 6,100, this figure having doubled during the past decade. The township is

shaped somewhat like a triangle. The new alignment of Interstate Route 78 and U. S. Route 22 lies near the northern boundary. U. S. Route 202 is near the eastern boundary and U. S. Route 69 is a part of the western boundary. The nearest towns are Somerville to the east, Flemington to the south and Clinton to the west. The only population centers of any consequence within the township are the villages of Whitehouse and Whitehouse Station, situated opposite each other on U. S. Route 22 about two miles west of plaintiff's land, and the smaller villages of Three Bridges and Centerville situated along U. S. Route 202, about four or five miles south of plaintiff's land. There are about 1,800 one-family dwellings, the total number increasing by an average of 47 each year. There are two established trailer courts, one accommodating three trailers, the other 11 or 12. Three small industrial establishments are situated in the township. It is largely a rural area with most of the land actively devoted to agriculture or formerly farmed and now inactive under the federal soil bank program. Under the amended 1955 zoning ordinance in effect at the time of the trial, 95% of the land in the township was zoned residential, the minimum lot sizes in the three residential zones ranging from 30,000 square feet to 75,000 square feet. The remaining 5% of the land was divided into three zones, General Business, Industrial and Highway Business. New multi-family dwellings and apartment houses were prohibited throughout the township. Most of the non-residential land is situated along U. S. Route 22 which runs for about five miles through the township. Plaintiff testified that in the vicinity of his land there are spread out along 4,000 feet on both sides of U. S. Route 22 several private homes, a real estate sales office, a swim club, two gas stations, a toy shop, a junkyard, a garage, two diners, a swimming pool sales outlet and a restaurant. He said these establishments are interspersed with a great amount of vacant land and that the homes are on large tracts.

Morton Lipschultz, a licensed engineer and land planning consultant called by the plaintiff, testified that he had designed a package sewage plant for plaintiff which would adequately handle any sanitary problems the proposed trailer park might present. He said a trailer park on plaintiff's land would be an attractive addition to the area, although he would not say that total exclusion of trailer courts could be characterized as "arbitrary, unreasonable or capricious." Other witnesses testified that the trailer industry had, in recent years, made great strides in constructing trailers which afforded many people desirable and attractive homes; that the most popular size of trailers today is 10 by 50 feet, and that most trailer dwellers are no longer transients but stay in the same location for extended periods of time and are active in community affairs. Plaintiff's expert, Isaac Bogert, testified that the proper lot size upon which a trailer should be placed is 50 by 60 feet.

Witnesses for the township testified trailers provide good living accommodations if the trailer courts are located in a suitable area, but that there is no such area within Readington Township. Several reasons were advanced, the most important being the township's desire to retain its character as a low-density living area and the unfavorable drainage conditions of the soil. James Swackhammer, Chairman of the Township Planning Board, testified that for the past three years the Board has been engaged in the preparation of a revised comprehensive zoning plan. The township introduced in evidence a letter dated January 23, 1961, from the Planning Board to the Township Committee. In the letter the Board stated it unanimously agreed "we do not desire to include trailers as a permitted use in our highway business zone" and recommended adoption of the amendment which was subsequently enacted by the Committee on February 10, 1961, and which is now challenged. Several reasons were given for the recommendation including the serious disposal and water supply problems, the inability of trailers to meet the minimum floor area requirements

applicable to other living units, and the poor land use which trailer courts constitute when compared with upgraded uses projected for land along the highways in the proposed revision. The Board concluded:

"In evaluating land use in our Township in our current study, the Planning Board is attempting to maintain in the Township the very beautiful character it currently has as one of the yet unspoiled rural areas in the state of New Jersey. In addition to our desire to maintain a beautiful and enjoyable character and environment for our residents, there is the very practical reality of desire to attract high type residential, business and light manufacturing use to our Township because of its current desirable character and the reasonable security that this may be maintained. This holds true not only for the interior portions of the town which are currently zoned for rural, agricultural, and residential use but also for the areas along U. S. Route No. 22 and No. 202. Here, although we are zoning primarily for good highway business and good commercial office manufacturing use, we are also making provisions for R–175 and R–250 residential use of this land when properly controlled. We feel this flexibility is reasonable since the precise future of the Township cannot be really predicted well at this time. Whether the ultimate development of the town finds our highway frontage primarily residential or primarily office manufacturing, it will, insofar as we are capable of guiding it, be high priced land with superior land use throughout. In light of these aims, we feel that the inclusion of an inferior land use such as a trailer park or trailer camp would be incompatible not only along the highways but in the residential areas as well."

Numerous photographs were introduced showing the characteristics of the land in the township. These depicted an open, attractive countryside, unspoiled and untouched by any urban movement. Mr. Swackhammer testified that as a result of the Board's studies, it has proposed changes in the uses permitted along U. S. Route 22; that a substantial proportion of the total frontage would be devoted to commercial, office and manufacturing (COM district). He said:

"It is our thinking with our particular geographic location and with the new freeway that is being erected through the north end of the Township, that our major attraction and areas for that land, if we can develop it. is to get light industrial use, offices, research

laboratories, and generally I think that would categorize the use that we envision for this land."

According to Swackhammer, the township's experience since it adopted its first comprehensive zoning ordinance in 1955, necessitated an extensive revision be made increasing minimum lot-size requirements and upgrading the types of uses permitted. He said the increase of lot sizes was essential to insure sanitary drinking water and adequate sewage disposal facilities. It was his opinion the major changes involved zoning along the highways. He said:

"Well, the 1955 ordinance has the highway zoned either for residential or highway business use. It was rather spotty in context, being laid out basically on the · pattern that has developed to date along the highway. The present zoning is intended to attempt to reserve the majority of that area for what we consider as our only reasonable expectation of industrial ratables of a nature that are suitable to the Township which we can service, and because of the fact that our future is rather difficult to really define exactly, predict it exactly, we have included in there the alternate use for residential development. But in the COM zone in particular, this is restricted to a development of a 10-acre parcel or larger. So that the total environment of the residential area will be preserved."

He stated there were many present uses along U. S. Route 22 which the Planning Board felt were undesirable where they were located and which would become nonconforming uses under the proposed revision.

Charles Agle, a municipal planning consultant, testified that he has been actively engaged since 1959 in aiding the township in its preparation of the revised master zoning plan. He stated the location and topography were such that the township should continue primarily as a high class·rural residential community with one-family dwellings on large tracts of land, in keeping with the township's "very sparsely populated area of the most beautiful and attractive rolling countryside." According to Mr. Agle, because of the township's location "[I]t will always be a sparsely populated area of good quality, without a great many of the problems

that beset the more intensive urban use which can be found farther east and near the centers of greater employment near the natural centers of easily constructed population density." He said that in order to foster conditions conducive to the anticipated development and because of the poor drainage qualities of the township's soil, isolated patches of intense residential land use should be prohibited. Mr. Agle believed that trailer courts belonged in an area "where there are existing small houses, where there is a highly developed, intensive use." He opposed trailer courts because no area suitable for high-density development exists within the township's borders, the same reason apartment houses of all types are excluded. He stated that the best use of land along U. S. Route 22 is "commercial, office, manufacturing, light manufacturing and industry rather than the customary roadside uses that would appeal to transients." The location of proposed Interstate Route 78 made it "unlikely and unreasonable to expect much transient traffic to use Route 22 in the distant future or in the near future after I–78 is finished." For the above reasons and because he believed uses located upon small tracts would deter the more desirable establishments from locating in the area, he recommended the township adopt a revised zoning ordinance upgrading permitted uses and substantially increasing lot-size requirements in the areas along the highway.

The township's health inspector, Frederick Ulrich, testified regarding the serious health problems created when any land within the township contained residences on small lots, *e. g.*, nonconforming uses. There is no public water supply system in the township, all the water being obtained from wells. Because of the preponderance of the nonpermeable red clay and shale in the soil, and the absence of any public sewerage system, he said sewage disposal presents a problem; that in the concentrated areas of the township there have been problems arising from the pollution of wells by sewage. It was Mr. Ulrich's opinion that

plaintiff's proposed package sewage plant was not an answer to the problems presented.

The trial judge, in holding the zoning ordinance invalid in its application to plaintiff's land, considered the existing zoning ordinance along with the proposed revision. He said that in his opinion the establishment of a trailer court on this site would not impair the "zoning plan either in the present or in the future." He believed the township could maintain its character in the 95% of it which is zoned residential. As to the remaining 5% he said: "[T]his particular use is no more harmful to property values than some of the existing or even allowable uses." Judgment was entered accordingly on July 17, 1961.

The zoning ordinance in effect at the time the case is ultimately decided is controlling. *Tice v. Borough of Woodcliff Lake,* 12 *N. J. Super.* 20, 25 (*App. Div.* 1951); *Socony-Vacuum Oil Co., Inc. v. Township of Mount Holly,* 135 *N. J. L.* 112, 117 (*Sup. Ct.* 1947). On November 1, 1961, while this appeal from the above judgment was pending, the township amended its zoning ordinance by adopting an extensive revision. This revision embodied substantially the proposed changes described by Mr. Swackhammer and Mr. Agle, and considered by the trial court in reaching its conclusions. Therefore, our result will be based upon substantially the same zoning provisions as were considered by the trial court.

The 1961 revision established six use districts. For the most part all of the land encompassed by the three former residential districts has been zoned into two new residential districts, R–250 and R–175, and, with exceptions not here material, can only be used for single family detached dwellings and farms. The minimum lot size in the more restrictive zone continues, as before, 75,000 square feet. The remaining area is divided into four districts: Mining, General Business, Commercial Office Manufacturing (COM) and Highway Business. The Mining District is situated in the extreme northwest corner of the township and no

dwellings are permitted there. The General Business District is confined to small areas in the villages of Three Bridges and Whitehouse Station. Single-family detached dwellings on lots containing not less than 39,000 square feet are permitted there. The new COM District and Highway Business District are confined to areas adjacent to U. S. Routes 22 and 202. Much of the former Highway Business Zone, including plaintiff's land, has been zoned into the newly created COM District. Since all of plaintiff's property is now included within the COM District, we are no longer confronted with a tract in two zones as the trial court was under the old ordinance. The categories of uses permitted in the COM District are basically light manufacturing plants, warehouse facilities, research laboratories, office buildings and single-family detached dwellings. The minimum lot upon which a use can be established there is 10 acres. In the case of one-family houses, the house must be part of an actual or projected development which includes not less than 10 acres, and before such houses are constructed the Board of Adjustment must determine that the project is compatible with the development of the district. Prior to the amendment, the zoning ordinance provided that no dwelling could be constructed anywhere within the township if it contained less than 750 square feet of living area. The revision provides for minimums ranging from 750 square feet to 2,000 square feet, depending upon the number of bedrooms in the house. A provision contained in the amendment prohibits new multi-family houses, apartments of all kinds and trailers throughout the township. Although the revision, like its predecessor, allows existing one-family houses to be converted into multiple-family houses, this can only be accomplished upon a tract on which each newly-created living unit has the minimum lot area required for one-family dwellings. That part of the old Highway Business zone which is not included within the new COM District is now within the new Highway Business District. Unlike the COM District, the usual

businesses serving transient highway travelers, such as gas stations, restaurants and motels, are allowed in this district, but all uses must be on a lot area of not less than five acres. In effect, the new ordinance appears to be designed to increase the amount of land upon which a use may be established and to avoid the interspersing of different establishments on small lots anywhere along the major highways which run through the township.

On this appeal the township argues that its prohibition is reasonable because trailer courts would not be compatible with the character of the township generally and also because they would stunt the growth of the COM District as it is projected under the revised ordinance. It says Readington is "a sparsely populated rural community divided naturally for planning purposes into large residential areas zoned to preserve open spaces and minimize sanitary, water supply and other problems attendant upon congestion and very much smaller prospective commercial and industrial areas where the municipality hopes to promote sizeable business and commercial enterprises." The township urges the emphasis in "mobile homes" has switched from the word "mobile" to the word "homes" and consequently a trailer should be treated as any other dwelling for zoning purposes. It argues that trailers as presently manufactured do not conform to the minimum floor-area requirements for dwellings generally and that plaintiff's proposed seven-trailer court on a three-acre tract does not conform to the minimum lot size requirements applied to dwellings. Therefore, the township concludes that since the construction of seven houses comparable in size to trailers on plaintiff's three acres is prohibited, the trailer court should likewise be barred. The township concedes "a mobile home park might not be any worse use than some already present on Route 22" but argues "the zoning plan seeks not only to maintain but also to improve the area."

The plaintiff contends that it is unreasonable for the township to totally exclude trailer courts since such estab-

lishments "belong in rural type areas just off a major artery," that such a ban is an abuse of the township's zoning power since trailers are healthful dwellings and trailer courts will not adversely affect plaintiff's area as it now exists, nor as it is projected under the new ordinance. He argues that a mobile home park is a combination commercial and residential use and that a "classification of a mobile home park as a residential development is an unreasonable arbitrary exercise of the zoning power."

We believe the present case is controlled by the principles enunciated in *Vickers v. Township Committee of Gloucester Township*, 37 N. J. 232 (1962), decided today. There we said the exclusion of trailer camps is viewed in the same light as is the prohibition of any other use which a municipality seeks to impose through its zoning ordinance. If the zoning ordinance "amendment presented a debatable issue we cannot nullify the township's decision that its welfare would be advanced by the action it took." *Id.*, at 242. In that case we held a township could prohibit trailer camps if it could reasonably conclude that such camps would obstruct the development of the township as envisioned by the planners and manifested by the zoning ordinance. Thus we need only consider the reasonableness of Readington's conclusion that trailer courts are incongruous with the orderly development of the township.

Readington envisions its growth as a rural residential community with low-density population. Consonant with this plan it has barred all types of living units which by their nature and design attract concentrations of people to small areas. These include houses on small lots, apartment houses and trailer courts. The township has determined that its development would be served best if the land in the COM District was devoted to light industrial, office and research laboratory facilities. Although it believes that one-family dwellings on ten-acre developments might be compatible with these uses, it believes that trailer courts would be detrimental to the district and not in

keeping with the overall character of the township. The trial judge was of the opinion that this conclusion was not justified. He reasoned the character of the community can be maintained in the 95% of the township which is zoned residential. Also, in his opinion, trailer courts are not incongruous with some of the other uses permitted within the district. We believe neither reason supports the trial judge's conclusion. If its goal is reasonable, a municipality has the right to maintain and promote its designed character throughout the township; it need not reserve 5% or any other portion of its land for uses inconsistent with its overall plan. And it is not within the court's power to substitute its opinion for that of the municipality as to the congruity of a use if the issue is debatable. As we have said, the sole question is whether the township's opinion is reasonable.

Our decision does not turn upon considerations of the effect which the plaintiff's trailer court will have upon its own area as it is now constituted. "It is of no significance that plaintiff's proposed trailer camp would not be detrimental to his immediate neighborhood as it now exists." *Vickers v. Township Committee of Gloucester Township, supra,* at *p.* 250. "It is necessary to look at the total picture to determine whether the township's ordinance violated the statutory zoning standards [*N. J. S. A.* 40:55-30 to 327] \* \* \*" *Id.,* at *p.* 245. Under the 1961 revision of the zoning ordinance many of the uses presently established in the COM zone are nonconforming uses. The township believes that trailer courts will be detrimental to this zone as it is projected. We said in *Vickers:*

"Sound planning and zoning look beyond the present into what lies ahead in the hopes of the planners.

\*     \*     \*     \*     \*     \*     \*     \*

Indeed, unless there is such planning and zoning, the municipality may suffer from the adverse effects of helter-skelter and deleterious property uses, thus discouraging industry from settling in the town-

ship.  Industry may shun the disharmony resulting from discordant uses side by side.

\*    \*    \*    \*    \*    \*    \*    \*

"And if the township is to avoid the 'deleterious impact' which one use may have upon other uses and encourage 'the most appropriate use of land throughout such municipality,' it must be concerned with the future as well as the present values of property.  Our recent decisions have uniformly held, in conformance with the constitutional provisions and the zoning statutes hereinbefore cited [*N. J. S. A.* 40:55-30 to 32] that 'general welfare' should be given a broad interpretation.  *Pierro v. Baxendale, supra; Fischer v. The Township of Bedminster, supra; Lionshead Lake, Inc. v. Township of Wayne, supra.*  If the zoning ordinance is reasonably calculated to advance the community as a social, economic and political unit, it furthers the general welfare and therefore is a proper exercise of the zoning power.  *Schmidt v. Board of Adjustment of the City of Newark,* 9 *N. J.* 405 (1952)."

■ The township envisions itself as a low-density area devoted primarily to substantial one-family dwellings located on large tracts and has excluded all types of living units inconsistent with this scheme.  The countryside in which it is situated is particularly suitable for low-density growth, making this anticipation reasonable.  There is a small portion of land which invites construction along different lines.  The township seeks to reserve this area for the uses which it believes belong there.  It seeks to bar uses which it believes would puncture the proposed plan and which, because of nonpermeable soil conditions, would create health problems.  Accordingly, trailer courts have been prohibited. Since the bases advanced for the township's enactment present, at the very least, a debatable issue as to the reasonableness of the prohibition, we cannot set aside the challenged provision of the zoning ordinance.  As we said in *Vickers,* at *p.* 249:

"We do not think that a municipality must open its borders to a use which it reasonably believes should be excluded as repugnant to its planning scheme.  It must be remembered that once a use is legally established, even though conditions impel a revision of the zoning ordinance and the use strikes a jarring note, it cannot be eliminated by such a revision under existing law.  See *R. S.*

40:55–48. If through foresight a municipality is able to anticipate the adverse effects of particular uses and its resulting actions are reasonable, it should be permitted to develop without the burdens of such uses."

Like the situation in *Vickers,* we believe "we would be flying in the face of the broad powers granted to municipalities by the Constitution and zoning statutes as interpreted by our decisions if we held that the township in the present case must, against the will of its governing body, allow the construction and operation of trailer camps in its" COM District. Accordingly, we hold the plaintiff has failed to show the township acted unreasonably in excluding trailer courts from its COM District.

The judgment of the Law Division is reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and HANEMAN—5.

*For affirmance*—Justice SCHETTINO—1.