**Charlotte F. WARD, Plaintiff,**

v.

**VILLAGE OF RIDGEWOOD, the Mayor and Council of the Village of Ridgewood and the Planning Board of the Village of Ridgewood, Defendants.**

**Civ. No. 81–2430.**

United States District Court,
D. New Jersey.

Jan. 25, 1982.

Joseph F. Rubacky, Jr., Hackensack, N. J., for plaintiff.

Daryl Ury Goodman, Stoldt & Horan, P. C., Hackensack, for defendants.

## OPINION

BIUNNO, District Judge.

Ward owns land fronting on Route 17, known as Lot 7 in Block 4704 in Ridgewood, NJ. At one time, the entire block was zoned residential. The zoning ordinance was amended in about 1970 to rezone the block for office buildings.

Thereafter, Ward made arrangements with a developer to construct an office building, the transaction being contingent on the developer's securing site plan approval and building permit. Site plans were drawn up and presented to the Planning Board which, after hearing, denied the application.

Other owners on Block 4704 made similar arrangements, with site plans similarly submitted, hearings had and the applications denied.

Over this period there were some six or so hearings on the subject of use for the Block, culminating in a recommendation by the Planning Board to the governing body to amend the zoning ordinance by returning the permitted use of Block 4704 to the original residential category. An ordinance to that end was duly introduced, notice given and passed.

A series of civil actions were then filed in Superior Court, Bergen County. One was by Ward's developer. Another was by Ward. The third was by the proposed developer and owner of other lots in the same block, who had also applied for and were denied site plan approval. The fourth was by the owner of another lot in the same block who had long made use of the property for the storage of heavy machinery or equipment as a "non-conforming" use even before the original residential classification.

All the actions were consolidated by order of Judge Trautwein, for trial purposes, except that the claim of inverse condemnation was severed for later consideration. The ensuing pretrial order also noted that damage claims would be tried later without prejudice to the parties. Trial was had on the basis of the testimonial record before the Planning Board and the various exhibits including the Board's denials, the amended ordinance, and the like.

As to the Ward property involved here, the trial judge ruled that the denial of the site plan approval was unwarranted and ordered the issuance of the building permit. He also ruled that the later amendment to the ordinance rezoning Block 4704 to residential was valid.

On cross-appeals to the Superior Court, Appellate Division, the validity of the amendment to the zoning ordinance was upheld but the ruling directing issuance of the building permit was reversed on the well-established principle that the law in effect at the time of judgment (either at trial or on appeal) controls, and since at that time the land use was restricted to residential purposes, no permit could issue later for an office building.[1] Petition to the Supreme Court of New Jersey for certification was denied.

The foregoing history is reflected in the moving affidavit and exhibits, and in the answering affidavit and exhibits, which between them presented the essential documents. The municipal defendants moved for summary judgment under F.R.Civ.P. 56, and at oral argument counsel said, in response to questions from the court, that there was no dispute about the factual history or about the authenticity of any of the document exhibits.

The motion is grounded on the proposition that the present suit, filed here about a year after the final judgment of the Superior Court (modified as required after appeal) is barred by that judgment under the doctrines of res judicata and collateral estoppel. This is an affirmative defense and was raised by the answer. Ward resists, arguing that the claim of inverse condemnation and damages for a taking of property for public use without just compensation was never tried. The suit here is said to be one for a remedy created by 42 U.S.C. § 1983, with jurisdiction resting on 28 U.S.C. § 1343(3). It is argued that neither the trial court nor the appellate court ever addressed or decided the "taking" claim because the inverse condemnation and damages issue was severed, much less the § 1983 claim (which was not pleaded there by explicit mention).[2]

---

1. This has been the rule for a long time. Illustrative cases are *Burmore v. Champion*, 124 N.J.L. 548, 12 A.2d 713 (E&A 1940); *Krugman v. Clifton*, 136 N.J.L. 32, 53 A.2d 803 (Sup. 1947); *Ridgewood Air Club v. Ridgewood*, 136 N.J.L. 222, 55 A.2d 100 (Sup.1947); *Tice v. Woodcliff Lake*, 12 N.J.Super. 20,.78 A.2d 825 (App.Div.1951); *Hohl v. Readington*, 37 N.J. 271, 181 A.2d 150 (1962).

2. The usual remedy available to a landowner unconstitutionally deprived of a property interest is the invalidation of the zoning ordinance, or ordering issuance of a permit. *Agins v. City of Tiburon*, 447 U.S. 225, 100 S.Ct. 2138, 65

Ward also argues impropriety at the municipal level in that the Planning Board is composed of the same persons who serve as the Mayor and Council. This, however, is obviously a matter of local law, and it was raised, argued and decided adversely to Ward.

Full understanding of the Superior Court suit requires a brief historical excursion. Under long established law, the former Supreme Court of New Jersey was vested with the power of the King's Bench to issue prerogative writs, such as certiorari, mandamus, quo warranto, prohibition and procedendo. This authority was exclusive (with one minor exception) and was protected against legislative invasion by the State's constitution. See the opinion of Chief Justice Beasley in *Dufford v. Decue*, 31 N.J.L. 302 (Sup.1865), and *Flanagan v. Treasurer, etc.* 44 N.J.L. 118 (Sup.1882); *Flanigan v. Guggenheim, etc.*, 63 N.J.L. 647, 44 A. 762 (E & A 1899); and *Green v. Heritage*, 64 N.J.L. 567, 46 A. 634 (E & A 1900), for example.

It is also of interest to note that through the prerogative writ power, the former Supreme Court had the right to review the proceedings of municipal corporations that do acts affecting the rights and property of individuals, in a supervisory fashion. *Carron v. Martin*, 26 N.J.L. 594 (E & A 1857); *Gregory v. Jersey City*, 34 N.J.L. 390 (Sup. 1871). Where a review of municipal ordinances required the investigation of questions of fact, the court's power to inquire into them existed as part of its constitutional power and was not dependent on any statute, such as the former Certiorari Act, N.J.R.S. 2:81–1, et seq. (1937), now repealed except for the vestige remaining as N.J. S.A. 2A:66–1 to 4. *Lighthipe v. Orange*, 75 N.J.L. 365, 68 A. 120 (Sup.1907), *aff'd* 76 N.J.L. 817, 74 A. 1135 (E & A 1908); *Dubelbeiss v. West Hoboken*, 82 N.J.L. 683, 82 A. 897 (E & A 1912).

With the adoption of the 1947 Constitution and its restructuring of the judicial branch, two important changes were made on the subject. One, the former individual prerogative writs, which had presented serious difficulties because of an encrustation of technical principles, were superseded. Two, in lieu thereof, review, hearing and relief was to be afforded in the Superior Court "as of right" in civil cases. See, *N.J.Const. 1947*, Art. 6 § 5, ¶ 4. These changes preserved the substance, eliminated the technicalities, and made the remedies a matter of right rather than one of discretion.

The command that both legal and equitable relief be granted in any cause so that all matters in controversy between the parties may be completely determined, *N.J. Const., 1947*, Art. 6, § 3 ¶ 4, coupled with liberal joinder rules, made both prerogative writ review and injunctive relief as well as damages available in a single suit. *O'Neill v. Vreeland*, 6 N.J. 158, 77 A.2d 899 (1951); *Massari v. Einsiedler*, 6 N.J. 303, 78 A.2d 572 (1951). The only restrictions of substance in the Superior Court are that a deficiency suit on a bond may not be joined with foreclosure of a mortgage, N.J.Court Rule R. 4:27–2(a), and that a claim for malicious prosecution cannot be asserted as a counterclaim in the very suit said to constitute the wrongful conduct, *Penwag etc. v. Landau*, 76 N.J. 595, 388 A.2d 1265 (1978), because the claim is unaccrued at the time by definition.

The other historical feature worth noting is the local zoning law. After the courts had decided that zoning ordinances were not a lawful exercise of the police power, an amendment to the local constitution to authorize them was proposed and approved on referendum on September 20, 1927, proclaimed October 18, 1927. See *N.J.Const., 1844*, Art. 4, § 6, ¶ 5 (1927). Enabling legislation was enacted as N.J.P.L. 1928, c. 274. For a contemporary review, see *Frank J.*

L.Ed.2d 106 (1980). See, also, *Fred F. French Inv. Co. v. New York*, 39 N.Y.S.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381 (1975), appeal dismissed 429 U.S. 990 (1976). New Jersey has

allowed damages when use of the land was delayed by an ordinance later ruled invalid, *Lomarch Corp. v. Englewood*, 51 N.J. 108, 237 A.2d 881 (1968).

*Durkin Lumber Co. v. Fitzsimmons*, 106 N.J.L. 183, 147 A. 555 (E & A 1929).

The 1947 Constitution continued this provision verbatim, except that in addition to zoning "buildings and structures", it was extended to embrace "the nature and extent of the uses of land", *N.J.Const. 1947*, Art. 4, § 6, par. 2.

Another addition was a provision that the law concerning municipal corporations formed for local government is to be liberally construed in their favor. *N.J.Const., 1947*, Art. 4, § 7, ¶ 11. This has been applied to matters of zoning. *Ward v. Scott*, 11 N.J. 117, 93 A.2d 385 (1952); *Yanow v. Seven Oaks Park*, 11 N.J. 341, 94 A.2d 482 (1953).

Thus, while New Jersey's courts at one time took a course opposite to that of *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the constitutional amendments and enabling legislation have brought local law into the same direction.

Whatever doubts there may have been before about the application of res judicata or collateral estoppel to ʹsuits under 42 U.S.C. § 1983, were laid to rest by the Supreme Court's decision in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The decision there rests squarely on the Congressional statute, 28 U.S.C. § 1738, which has been the law since the year 1790.

■ That statute requires that the judicial proceedings of any court of any state shall have the same full faith and credit in every court within the United States as they have by law or usage in the courts of that state.

This standard requires that the Court look to the laws or usage of the state to ascertain the preclusive effect there of the earlier judgment.

In New Jersey there is no question that the 1980 judgment would preclude a new lawsuit in the New Jersey courts on the claim asserted here.

This case is a direct parallel to *Falcone v. Middlesex County Medical Society*, 47 N.J. 92, 219 A.2d 505 (1966).

Dr. Falcone had successfully prosecuted a prerogative writ suit to require the County Medical Society to accept him as a·member so he would be eligible to serve on hospital staffs in the county. Having succeeded, he then filed a second suit for damages incurred over the period during which he had been denied admission unlawfully or wrongfully.

The Supreme Court ordered the complaint dismissed on the ground that any claim for damages that he might have had should have been asserted in the first action under New Jersey's single controversy doctrine which is now set out explicitly in N.J.Court Rule R. 4:27–1(b), effective 1979.

In the New Jersey suit here, the principle of *Falcone* was followed, since the prerogative writ suit challenging the denial of the building permit and the validity of the re-zoning amendment did assert a damage claim by way of asking for a determination that there had been inverse condemnation and damages. These issues were severed.

The trial on the severed issues was never reached because the predicate for them was a favorable judgment on the issues tried.

Since both the permit denial and the ordinance validity were upheld, there was no liability and hence no need to try damages.[3]

---

**3.** The decision in *Sixth Camden Corp. v. Tp. of Evesham*, 420 F.Supp. 709 (D.N.J.1976) has been examined, but is not applicable here for a number of reasons.

The case was decided at a time when a municipality was not regarded as a "person" under the Civil Rights Act, 42 U.S.C. § 1983, and could not be sued for damages, or for equitable or declaratory relief, see *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). This rule was changed by *Monell v. N.Y. City, etc.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Second, that opinion relied on *Bivens v. Six etc. Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a Fourth Amendment case, and a Circuit decision, *U.S. ex rel Moore v. Koelzer*, 457 F.2d 892 (CA 3, 1972), among others, for the proposition that a Bivens-type

A passage in *New Jersey Education Association v. Burke,* 579 F.2d 764 (CA 3, 1978) may give the impression that New Jersey has not decided, or had not decided, whether claims that could have been, but were not raised are precluded in a later suit. See footnote 53 at pages 774 and 775.

Evidently the parties in *Burke* failed to brief the Court on the point since the single controversy doctrine had been law even before *Falcone* which was decided in 1966. Any doubt there may have been in 1978 when *Burke* was decided was eliminated in 1979 when Rule 4:27–1(b), took effect.

Thus, under New Jersey law, the claim now made is not merely a claim that could have been made or an issue that could have been raised but was not. Rather, it is a claim and an issue that was required to be raised because of the single controversy rule. Failure to raise it would result in a bar in New Jersey.

Of course, if that is the preclusive effect in New Jersey, it is the preclusive effect here.

In this case Ward did raise it. The feature was severed as noted and was rendered moot when the judgment went against her and her developer on all issues of liability.

Since 1948 New Jersey has recognized a single form of action on the civil side known as a "civil action". See New Jersey Court Rule R.4:2–1 which parallels F.R. Rule Civ.P. 2.

Since 1948 New Jersey has required a claim for relief to contain no more than a statement of the facts on which the claim is based showing that the pleader is entitled to relief and a demand for the relief to which he deems himself entitled. See N.J. Court Rule R.4:5–2 which parallels F.R. Civ.P. 8(a)(2).

Since 1948 New Jersey has provided that every final judgment shall, and I underscore shall, grant the relief to which the party in whose favor it is rendered is entitled even though he has not demanded such relief in his pleadings. See N.J.Court Rule R. 4:42–6 which parallels F.R.Civ.P. 54(c), second sentence.

■ The Superior Court of New Jersey is vested with "original general jurisdiction throughout the state in all causes", *N.J. Const. 1947,* Art. 6, § 3, ¶ 2. Thus, its jurisdiction is coextensive with the full judicial power of the state. No statutes are needed since the authority is given by the local constitution.

*Allen v. McCurry, supra,* notes that the new remedy provided by § 1983 is one over which federal and state courts have concurrent jurisdiction. The same view has been expressed by the Supreme Court of New Jersey generally and in specific reference to a claim under 42 U.S.C. § 2000e(5) in *Peper v. Princeton,* 77 N.J. 55, 389 A.2d 465 (1978).

■ Thus, the Superior Court had jurisdiction over the prerogative writ challenge, over the dependent claim for inverse condemnation and damages, and over the § 1983 claim now sought to be litigated here.

■ Having gone to court, Ward was required by New Jersey law to assert all of those claims in a single lawsuit. It was mandatory to do so. The consequence is that the first judgment precludes the assertion of a § 1983 claim in a later suit in Superior Court. That being so, 28 U.S.C. § 1738, requires this court to give the Superior Court proceedings the same full faith and credit they would have in the Superior Court of New Jersey.

action could be grounded directly on the Fifth Amendment. The fact is that such a suit had been recognized in *U. S. v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882), a Fifth Amendment "taking" case involving Arlington National Cemetery, and the holding in *Lee* was a precedent on which the *Bivens* court relied. *Lee* was an ejectment suit.

Third, *Sixth Camden* had filed a Superior Court prerogative writ suit in March, 1974 and all the events in the case had occurred by July, 1974 (see 420 F.Supp. at 714). That action ended in a judgment for the landowner with affirmance on appeal and certification denied (420 F.Supp. at 719). Yet, the opinion makes no mention of the landowner's obligation to claim damages (whether under state law or § 1983) as required by *Falcone v. Middlesex, etc.,* 47 N.J. 92, 219 A.2d 505 (1966).

The motion is, therefore, granted.

Aside from the summary judgment aspects, see *Rogin v. Bensalem Township*, 616 F.2d 680 (CA 3, 1980), on the broader aspects of Section 1983 suits directed to state zoning action.[4]

Submit an order accordingly.

---

[4]. Zoning litigation grounded on 42 U.S.C. § 1983 is recent and scanty. The reason seems to be that deprivations of property rights were not regarded as coming within the Act until the decision in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Even then, the rule of *Monroe v. Pape*, that a municipality was not a "person" stood in the way until *Monell* was decided in 1978, see note 3, supra. The ruling in *Owen v. City of Independence*, 444 U.S. 822, 100 S.Ct. 42, 62 L.Ed.2d 28 (1980) that municipalities do not have a "good faith" immunity has no doubt stirred up activity, but the obstacles are still formidable.