SIXTH CAMDEN CORP., Plaintiff,

v.

TOWNSHIP OF EVESHAM, COUNTY OF BURLINGTON, et al., Defendants.

Civ. A. No. 74–1194.

United States District Court,
D. New Jersey.

Sept. 2, 1976.

Mathews & Sitzler by John O. Sitzler, Palmyra, N.J. (White & Williams by John Francis Gough, Richard M. Shusterman, Robert M. Schwartz, Philadelphia, Pa., of counsel), for plaintiff.

Bennett E. Bozarth, Delran, N.J., for defendants Planning Board, Hutton, Moon, Lease, Farinelli, Dombroski, Williams, Carasella and Barney.

Hartman, Schlesinger, Schlosser & Faxon by John E. Harrington, Mount Holly, N.J., for defendants Township, Council, De Grandis, Shenfeld and Garnett.

Arthur N. Frakt, James J. Seeley, Camden, N.J., for defendants Antel and Allen.

Harry H. Wooden, Jr., pro se.

## OPINION

BROTMAN, District Judge.

Plaintiff, the Sixth Camden Corporation, is a land developer that sought to build a shopping center in Evesham Township, Burlington County, New Jersey. It brings this action under 42 U.S.C. §§ 1983, 1985(3), and 1986, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, to redress asserted violations of its constitutional rights. Jurisdiction of the court is challenged, but plaintiff invokes 28 U.S.C. §§ 1331 and 1343(3).

Although other acts and theories are alleged, the principal thrust of the complaint is that the defendants wrongfully denied plaintiff a zoning variance and site plan approval, and that these actions denied it due process of law and caused it injurious delay in construction. Plaintiff seeks compensatory and punitive damages, a declaration of its rights, and injunctive relief; however, it subsequently completed construction of the shopping center, rendering its request for injunctive relief moot and modifying its other demands. Named as defendants are the Township of Evesham (hereinafter the "Township"), the Council of the Township of Evesham ("Council"), the Planning Board of the Township of Evesham ("Planning Board"); the Mayor, members of the Council, and members of the Planning Board, named individually; and two private citizens, Alexander F. Antel and Estelle J. Allen (hereinafter the "individual defendants"). The Township, the Council, and the individual defendants now move to dismiss the complaint for lack of jurisdiction, for failure to state a claim upon which relief can be granted, and upon other grounds.

### I. The Background

The facts set forth in the complaint are somewhat complicated.

Since November, 1972, plaintiff has owned approximately 20 acres of land in Evesham Township. In July, 1955, the Township had platted the land and zoned it for general business use. In 1960, the Township had rezoned the land in such a way that approximately 17.9 acres of plaintiff's land fell within a general business zone, and approximately 2.1 acres fell within a residential zone. Plaintiff alleges that the zoning ordinance of 1960 rendered the 2.1 acres of land in the residential zone "sterile and useless," and was an unconstitutional taking of its property. (Complaint, ¶¶ 18–23).

In July 1973 plaintiff submitted to the Planning Board a site plan proposing the construction of a shopping center on its land; this original plan located a portion of the construction on the 2.1 acres which had been zoned for residential use. The Planning Board indicated that no action would be taken on the plan until plaintiff obtained a zoning variance for the residentially-zoned portion of the site. (Complaint, ¶ 25). In October, 1973, the Zoning Board of Adjustment held a public hearing on the request for a variance, and as required by law all land owners within 200 feet of the vari-

ance property were given prior notice of the hearing. In November, 1973, the Zoning Board of Adjustment unanimously recommended to the Township Council that the variance be granted. (Complaint, ¶¶ 26–27).

Plaintiff contends that, under the applicable state law and local ordinances, the Council must limit its review of the recommendation of the Zoning Board of Adjustment to consideration of the record made before that body; but that, knowing of this requirement, the Council opened the matter for public testimony and comment at its meeting of January 15, 1974. On January 30, 1974, the Township advised plaintiff that it would take no action on the recommendation unless and until plaintiff prepared a transcript of the January 15th meeting for the Council. By state law, if the Council fails to act on the recommendation within sixty days, the recommendation is deemed disapproved. N.J.S.A. 40:55–39.1.[1] (Complaint, ¶¶ 29–31). The operation of the statute duly had that effect in February of 1974. Plaintiff contends that the Council's failure to act was "arbitrary, unreasonable, discriminatory . . . and unlawful." (Complaint, ¶ 32).

In March 1974, plaintiff filed an action in prerogative writ in the Superior Court of New Jersey, Burlington County, Docket No. L–19938–73, seeking judicial review of the Council's denial of the variance. In April 1974, the Superior Court granted the plaintiff a summary judgment and declared the variance granted. In May 1974, the Council voted to appeal the trial court's ruling. Plaintiff contends that the Council filed the appeal knowing of its groundlessness and solely for the purpose of maliciously delaying plaintiff's construction. (Complaint, ¶¶ 34–35, 38).

Rather than suffer further delays pending appeal of its state court suit, plaintiff then resolved to resubmit another site plan ("site plan # 2"), locating all of the proposed construction on land zoned for business use. Plaintiff alleges that "[a]s early as May 7, 1974, but in no event later than July 11, 1974," site plan # 2 had complied with all applicable federal, state and local laws. (Complaint, ¶ 39). Plaintiff contends that the Planning Board thus had a nondiscretionary duty to approve the plan, but instead arbitrarily and capriciously tabled it. (Complaint, ¶¶ 39, 39.1, 42(d), (f)).

Plaintiff finally contends that in June, 1974 the Council initiated procedures to rezone its land from general business to office district use. This rezoning, if passed, would have had the effect of blocking construction of plaintiff's shopping center. Plaintiff contends that since this rezoning would have been contrary to the Township Master Plan, state law required the Council to first refer the change to the Planning Board. According to the complaint, therefore, the Council acted illegally in proposing the rezoning ordinance without prior Planning Board approval. Plaintiff further alleges that at approximately the same time, the Council attempted to cure this defect by purporting to alter the Master Plan, without affording notice or a hearing to plaintiff, which action again contravened state law. However, in July 1974, when the rezoning ordinance came up for final approval, it failed of adoption by a single vote. (Complaint, ¶ 42(c), (e), (g)).

Distilling the essence from the foregoing narrative, plaintiff complains of four acts on the part of the defendants:

1. that the Council committed substantive and procedural error in refusing to pass plaintiff's zoning variance;

2. that the Council groundlessly appealed the decision of the New Jersey Superior Court declaring the zoning variance granted;

3. that the Planning Board refused its nondiscretionary duty to approve site plan # 2;

4. that the Council initiated a procedurally defective attempt to rezone

---

1. This statute has since been repealed. L.1975, c. 291, § 80, eff. August 1, 1976; N.J.S.A. 40:55–39.1 (Supp.1976).

plaintiff's property, albeit unsuccessfully.

Repeated reference to this summary will be made throughout this opinion.

Turning to its legal theories, plaintiff alleges that the foregoing facts constitute a conspiracy by the defendants to deprive it of its civil rights under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, the conspiracy sought:

a. to take the 2.1 acres of plaintiff's land zoned for residential use without just compensation;

b. to take the same property without due process of law;

c. to deny plaintiff the equal protection of state and local laws by denying it the necessary zoning variance and site plan approval, when such were required by law.

(Complaint, ¶¶ 41(a), (b), 44). Plaintiff also alludes to unspecified pendent claims under state law. (Complaint, ¶¶ 41(a), (d), 47.1, 47.2).

■ As relief, plaintiff originally prayed for damages in the amount of the fair market value of its entire tract, supplemented by the additional value the land would have had with zoning and site plan approval for its shopping center, plus additional compensatory damages for the following harms: financing charges during the period construction was delayed; loss of rental income due to delayed completion of the project; increased interest charges for permanent financing; injury to reputation; and other consequential damages. Together these total in the millions of dollars. It also prayed for punitive damages in the amount of $1-million; for its legal fees and costs of suit; and for declaratory and injunctive relief securing its rights to a zoning variance and site plan approval. However, subsequent to the filing of the complaint, plaintiff obtained its zoning variance through its state-court litigation, and by now has succeeded in constructing its shopping center upon the site. Its demands for equitable relief are therefore moot, but its prayers for damages, while modified by events, continue to present a live controversy. *E. g., Broderick v. Associated Hospital Service,* 536 F.2d 1, 3 n. 9 (3rd Cir. 1976).

## II. *The Township*

The cause of action against the Township will be analyzed first.

### A. *Jurisdiction*

■ The Township first urges that the complaint against it should be dismissed because it is not a "person" within the contemplation of the Civil Rights Act. This position is incontrovertible. A township is not a "person" within the Civil Rights Act whether the relief sought is damages, *Monroe v. Pape,* 365 U.S. 167, 187–91, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), or equitable, *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). It follows inevitably that declaratory relief must also be unavailable against the Township under § 1983.[2]

■ However, plaintiff also alleges that its action rests directly upon the Fourteenth Amendment, and that the court possesses jurisdiction over such an action by 28 U.S.C. § 1331.[3] In *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 390–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a cause of action for damages could be implied from the Fourth Amendment; the district court possessed jurisdiction over that action under § 1331 since more than $10,000 was in controversy. *Id.* at 398, 91 S.Ct. 1999 (Harlan, J., concurring). In *City of Kenosha v. Bruno, supra,* Justices Brennan and Marshall suggested in

---

2. *Smetanka v. Borough of Ambridge,* 378 F.Supp. 1366, 1373 (W.D.Pa.1974); *cf. City of Kenosha v. Bruno,* text *supra; Samuels v. Mackell,* 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

3. 28 U.S.C. § 1331 provides:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

a concurring opinion that the Fourteenth Amendment and § 1331 would support an analogous cause of action against municipalities which could not be sued under § 1983. 412 U.S. at 516, 93 S.Ct. 2222. This result would be particularly dictated in the Third Circuit, where the Court of Appeals has held that the application of *Bivens, supra,* is not confined to the Fourth Amendment. *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 894 (3rd Cir. 1972) (Fifth Amendment); *Paton v. La Prade,* 524 F.2d 862, 869–70 (3rd Cir. 1975) (First Amendment). And recently, in a case in which one of the defendants was a state college, the Third Circuit held:

> "Because the requisite jurisdictional amount for § 1331 is pleaded, the fact that the College is not a 'person' within the meaning of 42 U.S.C. § 1983 is not significant." *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 44 (3rd Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

This holding accords with numerous decisions by the lower federal courts, since *Kenosha,* that have recognized *Bivens*-type actions and § 1331 jurisdiction over municipalities or other § 1983 non-"persons."[4] *E. g., Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n. 1 (5th Cir. 1975); *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 577 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Brault v. Town of Milton,* 527 F.2d 730, *rev'd on other grounds, id.* at 736 (2nd Cir. 1975) (en banc); *Construction Industry Association v. City of Petaluma,* 522 F.2d 897, 903 (9th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); *Cox v. Stanton,* 529

F.2d 47, 50–51 (4th Cir. 1975); *Panzarella v. Boyle,* 406 F.Supp. 787, 791–93 & n. 7, 795–96 (D.R.I.1975); *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Cal.1974); *DuPree v. City of Chattanooga,* 362 F.Supp. 1136, 1139 (E.D.Tenn.1973); *Patterson v. City of Chester,* 389 F.Supp. 1093, 1095–96 (E.D.Pa. 1975); see Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922, 928–29 (1976) [hereinafter cited as *Damage Remedies*]; *see generally,* R. Hundt, *Suing Municipalities Directly Under the Fourteenth Amendment,* 70 Nw.U.L.Rev. 770 (1975) [hereinafter cited as *Suing Municipalities* ].

Particularly persuasive is the well-reasoned opinion of Judge Renfrew in *Dahl v. City of Palo Alto, supra.* That decision acknowledges that allowing a *Bivens* action against municipalities reduces *Monroe v. Pape* to a pleading rule, with the result turning upon whether a $10,000 controversy can be alleged. 372 F.Supp. at 650. However, Judge Renfrew's scholarly examination of the legislative histories of §§ 1983 and 1331 indicates that the different policies motivating the passage of each statute support reaching such a result:

> "Examination of the legislative histories of §§ 1983 and 1331 suggests that the bar against suing a municipality under § 1983 should not be read into § 1331. The legislative history of § 1983 reviewed by the Court in *Monroe* shows that the absence of a required amount in controversy was one of the concerns voiced by the act's opponents. . . . When the predecessor of § 1331 was passed four years later, however, it included the requirement of a stated amount in controversy. The passage of § 1331 was also motivated by very different considera-

---

4. *Skehan* and the cases cited cited indicate that *Bivens* should not be limited to causes of action against *federal* agents. *See Damage Remedies,* text *supra,* at 932–34.

 The Supreme Court has not yet ruled upon the propriety of these actions. In *Monroe v. Pape,* 365 U.S. 167, 169 n. 2, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), petitioner abandoned § 1331 jurisdiction on appeal to the Supreme Court. In *Moor v. County of Alameda,* 411 U.S. 693, 695, 93 S.Ct. 1785, 36 L.Ed.2d 596

(1973), plaintiffs never asserted jurisdiction under that section. In *City of Kenosha v. Bruno,* 412 U.S. 507, 514, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the amount in controversy had not been demonstrated to exceed $10,000, and the Supreme Court declined to consider the issue upon an unsatisfactory record and without briefs. The question was most recently approached, but not reached, in *Aldinger v. Howard,* —— U.S. ——, 96 S.Ct. 2413, 2415 n. 2, 49 L.Ed.2d 276 (1976).

tions than those to which § 1983 was a response. § 1983 was an effort by the Congress to provide a forum and a remedy for those whose rights were being violated but who could get no relief in the courts or agencies of their states. *Monroe, supra,* at 180 [81 S.Ct. 473]. Amendments were offered extending liability specifically to include cities and counties, but many members of Congress were unwilling to extend liability to municipalities, ' "the mere instrumentality for the administration of state law." ' *Monroe, supra,* at 190 [81 S.Ct. at 485]. As finally passed, the act provided redress only against the persons who were depriving others of their rights. [T]he predecessor of § 1331, on the other hand, was the culmination of efforts dating back to the first Congress to give general federal question jurisdiction to the federal judiciary. *See* Chadbourn & Levin, Original Jurisdiction of Federal Questions, 90 U.Pa.L.Rev. 639, 639–645 (1942). This revolutionary step in strengthening the federal government against the states was made with no substantive debate (Chadbourn & Levin, *supra,* at 643). The record is silent as to whether Congress meant to make municipalities liable for acts of their agents which violate federal law. While it may be argued that Congress assumed that suits in federal court against municipalities would be unconstitutional, as had recently been vigorously argued in the debates over the passage of § 1983 (*See Moor v. County of Alameda,* [411 U.S. 693, 708, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)]), it is not the role of this Court to read in such a limitation in the absence of any legislative history. [I]n view of . . . *City of Kenosha v. Bruno, supra,* . . . such jurisdiction depends only upon a clear showing of the

requisite amount in controversy . . ."
*Id.* at 650–51 (footnote omitted).

*Dahl* illustrates the rationale for holdings which, as the cases cited above show, have by now become commonplace. *See also Damage Remedies* at 935–51. Accordingly, plaintiff may maintain its action against the Township under § 1331 and the Fourteenth Amendment. The Township's motion to dismiss for lack of subject-matter jurisdiction on this basis must therefore be rejected. This conclusion is subject to the court's comments about the amount in controversy in part II.G of this opinion, *infra.*

■ Notwithstanding the conclusion that plaintiff's cause of action against the Township lies under the Fourteenth Amendment and § 1331, rather than under § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), the claim still ultimately derives from the same constitutional source. Therefore, to fill the doctrinal interstices of a *Bivens*-type action, a district court may correctly apply law developed in § 1983 litigation. *See Brawer v. Horowitz,* 535 F.2d 830, 834 (3rd Cir. 1976); *Paton v. La Prade, supra,* at 871, 872; *cf. Dahl v. City of Palo Alto, supra,* 372 F.Supp. at 649 n. 2; *Damage Remedies* at 952–55. Subsequent portions of this opinion which apply aspects of § 1983 law to the claim against the Township will note this point.

### B. *The Eleventh Amendment*

■ The Township next argues that the Eleventh Amendment[5] divests this court of jurisdiction. This contention is without merit.

It is, of course, true that

"even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan,* 415 U.S. 651,

---

5. The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . .
 Although the Eleventh Amendment by its terms does not bar suits against a state brought

by its own citizens, it has been construed to do so. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus the fact that plaintiff is a jural citizen of New Jersey is of no consequence for Eleventh Amendment considerations.

663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

The Third Circuit has defined these situations:

> "The conclusion that must be reached before the Eleventh Amendment may be interposed . . . is that the state is the real party in interest. [Citations omitted.]" *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250 (3rd Cir. 1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970).

Although the court in *Urbano v. Board of Managers, supra,* comprehensively discussed the factors relevant in applying the Eleventh Amendment test, no useful purpose would be served by cataloguing their application here. "Where monetary damages are sought, the dominant factor is the impact of such relief on the State Treasury." *S. J. Groves & Sons Co. v. New Jersey Turnpike Authority,* 268 F.Supp. 568, 574 (D.N.J.1967). Here the Township of Evesham is a financial entity separate and distinct from the State of New Jersey. *See, e. g.,* N.J.S.A. 40A:4–1 et seq. The court in *Urbano, supra,* at 251, cited with approval the conclusion reached in *S. J. Groves & Sons Co., supra:*

> "Counties and municipalities do not partake of the Eleventh Amendment immunity enjoyed by the States. [Citations omitted.]" 268 F.Supp. at 574.

*See* Note, *A Practical View of the Eleventh Amendment—Lower Court Interpretations and the Supreme Court's Reaction,* 61 Geo. L.J. 1473, 1484 (1973).[6] The fact that cities are routinely suable in federal court diversity actions, *Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933); *Illinois v. City of Milwaukee,* 406 U.S. 91, 97, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *Moor v. County of Alameda,* 411 U.S. 693, 717–18, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), merely confirms that there is no general bar against suing municipalities in federal court.

### C. *Rights Protected*

■ To establish a cause of action under § 1983, two elements must be proved: (1) that the defendants acted under color of state law; and (2) that a constitutional right has been denied. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Phillips v. Trello,* 502 F.2d 1000, 1004 (3rd Cir. 1974). Identical elements apply to the *Bivens*-type action against the Township. Part II.A, *supra; Damage Remedies* at 952. No party denies that the Township acts under color of state law. The all-important heart of this case is whether the facts alleged, if proved, amount to a violation of any of plaintiff's constitutional rights.

■ Both the Township and the individual defendants immediately contend that plaintiff alleges only violation of its property rights, which, in contrast to personal liberties, are not interests which the Fourteenth Amendment protects, citing *Hague v. C.I.O.,* 307 U.S. 496, 531–32, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Stone, J., concurring). However, the law today is otherwise. In *Lynch v. Household Finance Corp.,* 405 U.S. 538, 543–52, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the Supreme Court firmly held that rights in property were no less protected than any other personal liberty or civil right. Accordingly, the post-*Lynch* lower court decisions regularly hold that violations of property rights are now cognizable violations of Fourteenth Amendment rights. *E. g., Gaffney v. Silk,* 488 F.2d 1248, 1250 (1st Cir. 1973); *McClendon v. Rosetti,* 460 F.2d 111, 112–13 (2nd Cir. 1972); *Russell v. Bodner,* 489 F.2d 280, 281–82 (3rd Cir. 1973); *Turner v. Impala Motors,* 503 F.2d 607, 611 n. 8 (6th Cir. 1974); *Flood v. Margis,* 461 F.2d 253, 255 (7th Cir. 1972); *Gibson v. City of Seattle Police Department,* 472 F.2d 1220, 1221 (9th Cir. 1973)

---

**6.** The Township cites *Washington v. Brantley,* 352 F.Supp. 559, 565 (M.D.Fla.1972), and *Lewis v. Vermont,* 289 F.Supp. 246, 248 (D.Vt.1968), for the contrary position. Although those cases may be distinguishable as reflecting different governmental structures in those states, this court is in any event bound by the decision of the Third Circuit in *Urbano v. Board of Managers,* text *supra.*

(per curiam); *Rios v. Cessna Finance Corp.,* 488 F.2d 25, 28 (10th Cir. 1973). The cases cited by the defendants for the contrary position either antedate *Lynch* or are inapposite.

### D. *Abstention*

All moving defendants join in a request that the court abstain from hearing this case, citing the pendency of two related state-court suits. The first, *Sixth Camden Corporation v. Township of Evesham,* Docket No. L–19938, Superior Court of New Jersey, Law Division, Burlington County, is the action by the present plaintiff seeking the grant of its zoning variance by the Superior Court, and has been referred to previously in recounting the facts alleged in the complaint. The second, *Allen v. Planning Board of the Township of Evesham,* Docket No. L–662–74, Superior Court, Law Division, Burlington County, refers to an event which took place after the filing of the complaint in this suit: it challenges the validity of the Planning Board's approval of site plan # 2.

█ The Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976), identified three general categories of abstention. The first, *Pullman*-type abstention, takes its name from *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). A federal court should abstain when it appears that constitutional decisions may be obviated, *id.,* or materially altered or reduced, *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152 (1959), by decisions of unsettled state law. *Schenley Industries, Inc. v. New Jersey Wine & Spirit Wholesalers Ass'n,* 272 F.Supp. 872, 882 (D.N.J.1967); Wright, *Law of Federal Courts* § 52 (2nd Ed. 1970). At the time the motion was argued, the validity of the Council's denial of the zoning variance was in litigation before the state courts in *Sixth Camden Corp. v. Township of Evesham, supra.* Since the state courts

could conceivably have adjudicated the denial as valid, removing one of plaintiff's major constitutional claims, urging abstention at that time was eminently reasonable. *See McLarty v. Borough of Ramsey,* 270 F.2d 232, 234–35 (3rd Cir. 1959).

█ During the pendency of this motion, however, the state-court *Sixth Camden* case has reached a final adjudication. The decision of the Superior Court of New Jersey was affirmed by the Appellate Division, Docket No. A–2478–73, June 30, 1975, and the Supreme Court of New Jersey denied a petition for certification by order of October 14, 1975. 69 N.J. 77, 351 A.2d 5 (1975). The impact of this decision will be treated in part II.F of this opinion, *infra,* but it suffices to say that its pendency no longer suggests abstention by this court.

However, the continued pendency of the other state-court suit, *Allen v. Planning Board of the Township of Evesham, supra,* since it challenges the validity of the Planning Board's approval of site plan # 2, touches plaintiff's allegations that the Planning Board violated its constitutional rights by delaying that approval. *See* the factual summary in part I, *supra.* But an inspection of the issues in that case reveals that no matter how that case is resolved, it cannot eliminate or alter the necessity for a constitutional adjudication of the instant plaintiff's claim. In *Allen v. Planning Board of the Township of Evesham,* 137 N.J.Super. 359, 349 A.2d 99 (App.Div.1975), the Appellate Division of the Superior Court of New Jersey remanded the case for further findings on whether, as the plaintiffs in that suit alleged, the site plan approval had been granted under duress,[7] and on another matter not relevant here. But the question of duress would appear to cast no light upon the present plaintiff's contention that it had been entitled to its approval at an earlier time. Since the federal claim will survive any conceivable ruling in the state-court suit, abstention on this basis is unwarranted.[8] *See Public Utilities Com-*

---

**7.** The duress alleged was the pendency of the instant (federal court) suit for damages.

**8.** Of course, abstention may be appropriate even in the absence of a pending state-court

mission v. United Fuel Gas Co., 317 U.S. 456, 462–63, 63 S.Ct. 369, 87 L.Ed. 396 (1943); Gibson v. Berryhill, 411 U.S. 564, 580, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

▮ Nor does either of the other two varieties of abstention identified by the Supreme Court warrant abstention. The Supreme Court defined the second category of abstention cases as follows:

"Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Colorado River Water Conservation District, supra, 96 S.Ct. at 1244.

Here it is enough to note that no questions of state law are presented; plaintiff's claims for damages, excepting any possible pendent claims, are purely federal constitutional causes of action. The final group of abstention cases involves state criminal, "nuisance," or tax proceedings, id. at 1245–46; none of these instances is involved here. Accordingly, the motion to dismiss on abstention grounds will be denied.

### E. Standard for Dismissal

A dismissal for failure to state a claim must meet a rigorous standard. "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2A Moore's Federal Practice ¶ 12.08 at 2271–74 (1968) (emphasis in original); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Scott v. Plante, 532 F.2d 939, 945 (3rd Cir. 1976); Gray v. Creamer, 465 F.2d 179, 182 (3rd Cir. 1972).

▮ "For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted," Jenkins

v. McKeithen, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); Curtis v. Everette, 489 F.2d 516, 518 (3rd Cir. 1973), cert. denied sub nom. Smith v. Curtis, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), and those allegations should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Curtis v. Everette, supra. But the court need not necessarily accept the legal or other conclusions set forth in the complaint. Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The Wright & Miller treatise states:

"Basically, the court will accept the pleader's description of what happened to him along with any conclusions that can reasonably be drawn therefrom. However, the court will not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself." 5 Wright & Miller Federal Practice & Procedure § 1357 at 597 (1969) (footnotes omitted).

No matter how unlikely it may seem that plaintiff will prove its entitlement to relief, federal policy favors dispositions on the proofs rather than on the pleadings. Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3rd Cir. 1965); 5 Wright & Miller, supra, § 1357 at 603. And the plaintiff should be granted every opportunity to cure defects in its pleadings by amendment, no matter how unpromising its initial attempt. Id. at 611–14.

It is with these principles in mind that plaintiff's constitutional claims must be examined.[9]

case. The New Jersey Constitution contains a provision very similar to the Federal Fifth Amendment. N.J.Const., Art. 1, ¶ 20. For a thorough discussion leading to the conclusion that the existence of such a clause does not by itself mandate abstention, unless mandated by

pending state-court cases, see Donohoe Constr. Co. v. Maryland-Nat'l Capital Park & Planning Comm'n, 398 F.Supp. 21, 24–29 (D.Md.1975).

**9.** The format of the complaint—an unstructured sequence of paragraphs—makes the various claims and causes of action difficult to

## F. The Constitutional Violation

### 1. Taking Without Compensation

■ Paragraph 41(a) of the complaint alleges that the defendants conspired to take plaintiff's 2.1 residentially-zoned acres without just compensation, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution.

The Fifth Amendment provides in relevant part:

"... nor shall private property be taken for public use, without just compensation."

This portion of the Fifth Amendment is made applicable to the states by reason of the Due Process Clause of the Fourteenth Amendment. *Chicago, Burlington & Quincy Railroad Co. v. City of Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *West v. Chesapeake & Potomac Telephone Co.*, 295 U.S. 662, 671, 55 S.Ct. 894, 79 L.Ed. 1640 (1935). Corporations are deemed to be persons entitled to the protection of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Grosjean v. American Press Co.*, 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Safeguard Mutual Insurance Co. v. Miller*, 472 F.2d 732, 733 (3rd Cir. 1973). Actions to redress a taking without compensation are called "inverse condemnation" actions.[10] If the amount in controversy exceeds $10,000, inverse condemnation actions have been routinely held to lie within the federal-question jurisdiction of the district court. 28 U.S.C. § 1331; *e. g., Lowe v. Manhattan Beach*

separate and analyze. The discussion in the text attempts to identify each claim or cause of action and subject it to appropriate scrutiny. Plaintiff may find that to separate each legal theory it relies upon in a separate count, together with references to the facts supporting the theory, would promote clarity and aid counsel as well as the court. Such an amended complaint could additionally specify exactly which pendent state-law claims, if any, plaintiff wishes to assert. With regard to the pendent claims counsel for plaintiff should also study the Supreme Court's recent decision in *Aldinger v. Howard*, —— U.S. ——, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

*City School District*, 222 F.2d 258, 259 (9th Cir. 1955); *Foster v. City of Detroit*, 405 F.2d 138, 144 (6th Cir. 1968); *Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199, 200 (6th Cir. 1974); *Dahl v. City of Palo Alto, supra; Haczela v. City of Bridgeport*, 299 F.Supp. 709, 712 (D.Conn.1969).

■ Although in this case plaintiff's land was regulated (i. e., by zoning) rather than confiscated, regulation may nevertheless amount to a taking. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *see United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958):

"[A]ction in the form of regulation can so diminish the value of property as to constitute a taking. . . . However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation."

Thus, the fact that the property may have decreased in value is not by itself enough:

"Although a comparison of values before and after is relevant, [citation omitted], it is by no means conclusive, see *Hadacheck v. Sebastian*, [239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915)], where a diminution in value from $800,000 to $60,000 was upheld." *Goldblatt v. Town of Hempstead, supra.*

To prove a taking, a stronger standard must be met:

10. "Inverse condemnation is a cause of action available to a property owner whose property has been taken or damaged for public use and who has not been paid just compensation. . . . Inverse condemnation differs from eminent domain in that the action is initiated by the [property] owner rather than by the government. . . . In some states, statutes set out the right of inverse condemnation. . . . In other states, and under the United States Constitution, the constitutional provision providing for just compensation supplies the basis for an action in inverse condemnation." Note, *Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance*, 26 Stan.L.Rev. 1439, 1441–42 n. 9 (1974).

"For there to be a taking the landowner must show he has been deprived of all reasonable uses of his land." *C. F. Lytle Co. v. Clark*, 491 F.2d 834, 838 (10th Cir. 1974).

*Accord, Steel Hill Development, Inc. v. Town of Sanbornton*, 469 F.2d 956, 963 (1st Cir. 1972); *see Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).

Here, the state-court *Sixth Camden Corp. v. Township of Evesham* case, *see* part II.D, *supra*, of this opinion, considerably assists the application of this legal standard. A transcript of Judge Martino's oral opinion in the New Jersey Superior Court in that case (hereinafter cited as Oral Opinion) is attached to the complaint. It reveals that plaintiff's 2.1 residentially-zoned acres were "land-locked" and could not be used for residential purposes:

"The plaintiff has more than met *its* burden by showing . . . that this isolated parcel cannot feasibly be used for a permitted use, *thus robbing it of all value*." *Oral Opinion* at 48–49 (emphasis supplied).

As recounted in part II.D of this opinion, the decision in the Superior Court was upheld throughout the appellate process. Thus, not only does plaintiff allege a workable legal theory, but there is a *prima facie* indication from the state-court litigation that the required showing may be met. As a consequence, this aspect of plaintiff's case withstands the motion to dismiss. · This conclusion is, again, subject to the qualification developed *infra*, part II.G of this opinion, relating to damages.

### 2. *Due Process of Law*

#### a. *Substantive Due Process*

Paragraph 41 of the complaint alleges that the defendants conspired:

"(d) to deny Plaintiff the *substantive* and procedural protections guaranteed by the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution and by state and local statutes, · ordinances, customs and/or usages. . . ." (emphasis supplied).

This allegation invokes a standard of review applied by the federal courts in zoning cases which originated in the Supreme Court's very first treatments of zoning regulations. In 1926 the Court wrote:

"The [zoning] ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions.

. . . . .

"[I]t must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387, 395, 47 S.Ct. 114, 118, 121, 71 L.Ed. 303 (1926).

The following Term, the Supreme Court reiterated this standard:

"The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare. *Euclid v. Ambler Co.*, supra, p. 395 (47 S.Ct. 114 [71 L.Ed. 303])." *Nectow v. City of Cambridge*, 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928).

*See also Gorieb v. Fox*, 274 U.S. 603, 610, 47 S.Ct. 675, 71 L.Ed. 1228 (1927).

Since that time a number of cases, primarily in the Fifth, Eighth, and District of Columbia Circuits, have implemented the test set forth above. Although a claim that a denial of a zoning variance or other zoning adjustment deprived a plaintiff of due process of law ordinarily will fail to present a substantial federal question, when the action or inaction can be described as "arbitrary and capricious," that is, lacking "sub-

stantial relation to the public . . . welfare" within the cases quoted above, a violation of the Fourteenth Amendment's guarantee of due process occurs. *E. g., Shenk v. Zoning Commission*, 142 U.S.App. D.C. 267, 440 F.2d 295 (1971); *Steel Hill Development, Inc. v. Town of Sanbornton, supra*, at 960; *Stone v. City of Maitland*, 446 F.2d 83, 86–87 (5th Cir. 1971); *Higginbotham v. Barrett*, 473 F.2d 745, 747–48 (5th Cir. 1973); *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); *Blackman v. City of Big Sandy*, 507 F.2d 935, 936 (5th Cir. 1975); *City of St. Paul v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 413 F.2d 762, 766–67 (8th Cir.), *cert. denied*, 393 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969); *Burns v. City of Des Peres*, 534 F.2d 103, 108 (8th Cir. 1976). In reality this is a review of substantive due process. *Construction Industry Association v. City of Petaluma*, 522 F.2d 897, 905–07 (9th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976).[11]

■■■ The scope of this review, however, is extremely narrow. A federal court does not sit as a "super zoning board" to review the correctness of a zoning decision, *Steel Hill Development, Inc. v. Town of Sanbornton, supra*, at 960; *Construction Industry Association v. City of Petaluma, supra*, at 906, or even its legality under state law. Absent allegations that the ordinance impinges upon a constitutionally suspect classification or fundamental constitutional right,[12] neither of which are present in this case,

"[t]he only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation

to the general welfare." *South Gwinnett Venture, supra.*

Alternately stated,

"Thus in testing . . . zoning ordinances . . . the sole question is whether there is a rational relationship between the ordinance and the promotion of some aspect of the City's police power—a label which describes the full range of legitimate public interests." *Stone v. City of Maitland, supra*, at 87.

Plaintiff therefore bears a heavy burden of proof since under this test, if any legitimate public interest supporting the zoning decision exists then the decision is not lacking in due process.

Furthermore, the range of public interests comprehended by the public welfare is exceedingly broad. In oft-quoted language, the Supreme Court has stated:

"The concept of the public welfare is broad and inclusive. [Citation omitted.] The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." *Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954).

*Accord, Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

So the test to be applied affords the zoning authority the utmost latitude in justifying its actions.

■■■ The first of plaintiff's four transactions allegedly generating liability, *see* part I, *supra*, is the denial of the zoning variance. Once again, the Oral Opinion rendered in the New Jersey Superior Court

---

11. *See, e. g., Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976):

"[The Due Process Clause] affords not only a procedural guarantee against the deprivation of 'liberty,' but likewise protects substantive aspects of liberty against unconstitutional restriction by the State. [Citations omitted.]"

12. Under these circumstances a stricter standard of review would be applied. *See Construction Industry Ass'n v. City of Petaluma*, text *supra*, at 906 n. 11; *Steel Hill Development, Inc. v. Town of Sanbornton*, text *supra*, at 960 & n. 5; *Boraas v. Village of Belle Terre*, 476 F.2d 806, 813 (2nd Cir. 1973), *rev'd*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

materially assists the application of the test to the facts of the case at bar. It reveals that the court found support in the record made before the Zoning Board of Adjustment for three findings made by the Board, each made with reference to plaintiff's 2.1-acre, residentially-zoned parcel. These findings, taken together, satisfied the criteria required by New Jersey law and enabled the Superior Court to declare the variance granted. They were:

—that the denial of the variance would render the property useless and would cause plaintiff undue hardship. *Oral Opinion* at 47. A town ordinance requires every building to be contiguous to a public street for a distance of 35 feet, but the 2.1-acre parcel is inaccessible without the installation of a 600-foot roadway. The roadway would raise the cost of each home to a prohibitive $90,-000. *Id.* at 46–47. This finding satisfied the first statutory requirement that "special reasons exist for the variance. N.J. S.A. 40:55–39(d).

Secondly, that the "negative criteria" in the statute were met: that the variance "can be granted without substantial detriment to public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55–39(d); *Kohl v. Mayor and Council of Fair Lawn,* 50 N.J. 268, 276 [234 A.2d 385] (1967). The court noted that no evidence presented to the Board negated this conclusion. *Oral Opinion* at 47–48.

—Thirdly, "there must be a finding that the general welfare is [affirmatively] served because the use is peculiarly fitted to the particular location for which the variance is sought." *Kohl, supra,* at 279 [234 A.2d 385]. The court held this requirement met in the passage previously noted:

"Plaintiff has more than met its burden by showing . . . that this isolated parcel cannot feasibly be used for a permitted use, thus robbing it of all value." *Oral Opinion* at 48–49.

The decision in the trial court was affirmed through the appellate process, *supra* part II.D.

Taking these three findings together, plaintiff has stated a *prima facie* case that the denial of zoning variance was "arbitrary and capricious" and "having no substantial relationship to the general welfare," *South Gwinnett Venture, supra.* The state court decision squarely holds that the denial of the variance would work a hardship upon the plaintiff, that the grant of the variance would in no way injure the public interest, and that the public welfare would be affirmatively served by its grant. The court at this time of course expresses no opinion as to the ultimate likelihood of success as to this claim; *South Gwinnett Venture, supra,* held that upon a factual showing of arbitrariness, justifications within the public welfare could still be shown. 491 F.2d at 7. This court's observations as to damages, part II.G *infra* of this opinion, must also be noted. The sole holding at this time is that the Township's motion to dismiss, as to the portion of plaintiff's claim arising from the denial of the zoning variance, must be denied.

Since all four of plaintiff's allegedly actionable occurrences, *supra* part I, lie within its overall allegation of a conspiracy to violate its civil rights, once one of them has proved sufficient to defeat the motion to dismiss, no further consideration need be given to the others. However, a few words about each of the others may serve to guide counsel in further proceedings in this case.

■ Like zoning in general, the rezoning of property, and the regulation of structures by means of building codes and site plans, both derive from the police power, and public authorities therefore possess great freedom in the exercise of those powers, so long as the utilization of those powers bears any reasonable relationship to the public "health, safety, morals, or general welfare," *Village of Euclid v. Ambler Realty Co., supra.* See, e. g., *City of St. Paul v. Chicago, St. Paul, Minneapolis & Omaha Railway Co., supra* (rezoning; height restriction); *Walker v. State of North Caroli-*

*na,* 262 F.Supp. 102 (W.D.N.C.1966), *aff'd,* 372 F.2d 129 (4th Cir.) (per curiam), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2134, 18 L.Ed.2d 1360 (1967) (building code). So the same standard developed heretofore with regard to the zoning variance will also govern plaintiff's contentions with regard to the site plan and the attempted rezoning ordinance. With specific regard to the latter, the question must be raised whether any violation can have occurred, since the ordinance was never passed.

■ Plaintiff's last remaining contention deals with the Township's allegedly groundless appeal of the state-court *Sixth Camden* case. This allegation sounds in the common-law tort of malicious use of civil process. *See generally* W. Prosser, *Law of Torts* § 120 (4th ed. 1971). However, in a proper case it may provide a basis for federal civil rights liability. *See, e. g., Brault v. Town of Milton, supra,* 527 F.2d at 738–41. But the application of that case to the instant facts can be left for another day. For now, it is enough to say that to the extent the complaint prays for damages for the violation of substantive due process rights, it withstands a motion to dismiss for failure to state a claim.

### b. *Procedural Due Process*

Paragraph 41(d) of the complaint alleges that the defendants conspired to

"deny Plaintiff the . . . *procedural* protections guaranteed by the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution and by state and local statutes, ordinances, customs and/or usages . . ." (emphasis supplied)

Of the four principal acts identified in part I of this opinion of which plaintiff complains only two allege procedural irregularity. The first, the Council's denial of the zoning variance, was allegedly attended by two procedural errors: that the Council received public testimony when it should have restricted itself to review of the record before the Zoning Board of Adjustment; and that it failed to act within the statutory period on the ground that plaintiff had not supplied it with a transcript of that testimony. (Complaint, ¶¶ 28–32, 42(a)). The second transaction alleging procedural error is the attempt by the Council to rezone plaintiff's land from general business to office use. There the alleged procedural deficiencies are that the proposed rezoning ordinance supposedly contravened the Master Plan, and that the Council altered the Master Plan without affording the plaintiff notice or a hearing. (Complaint, ¶ 42(c), (e)). These are the facts which, for the purposes of this motion, must be taken to have occurred. *See* part II.E, *supra.*

■ It is axiomatic that to support an action in federal court based on the federal constitutional guarantee, only a violation of *federal* due process of law will suffice. Yet the thrust of the procedural deficiencies charged in the complaint, as the above recitation indicates, is that the defendants failed to comply with the procedural requirements of the applicable *state* law. *Saunders v. Cahill,* 359 F.Supp. 79, 83 (N.D. Ill.1973), highlights plaintiff's difficulty:

"It is well settled that the plaintiffs' alleged right to have the relevant state law strictly obeyed is not a federal right protected by the Civil Rights Act . . . or the Constitution of the United States. [Citations omitted.]"

To the same effect is *Boyer v. Wisconsin,* 345 F.Supp. 564–66 (E.D.Wis.1972):

"Violation of a state law does not automatically give rise to a cause of action under the civil rights acts. *Ortega v. Ragen,* 216 F.2d 561, 562 (7th Cir. 1954). It is only when such violation results in the infringement of a federally protected right that a cause of action may be said to exist. *Screws v. United States,* 325 U.S. 91, [108, 65 S.Ct. 1031, 89 L.Ed. 1495] (1945); [further citations omitted]."

By contrast, the federal guarantee of due process of law, rather than incorporating the requirements of state law, is more general:

"The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several states and make them the test of what it requires

. . . . What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions . . . ." *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926).

It is also more flexible:

"Unlike some legal rules, due process is protean in nature. The determination of what process is due depends on appropriate accommodation of the competing interests involved. *Goss v. Lopez,* 419 U.S. 565, [95 S.Ct. 729, 42 L.Ed.2d 725] (1975); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, [81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961)." *Chung v. Park,* 514 F.2d 382, 386 (3rd Cir.), *cert. denied,* 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975).

Of crucial importance to this case, then, is which procedural requirements, if any, the Due Process Clause requires in the specific context of local zoning.

The United States Court of Appeals for the Fifth Circuit recently had occasion to consider this precise question in *South Gwinnett Venture v. Pruitt, supra.* It concluded that

"local zoning is a quasi-legislative procedure, not subject to federal judicial consideration in the absence of arbitrary action." 491 F.2d at 7.

The opinion developed that "arbitrary action" referred to the test of substantive due process which the previous subsection has explored. The question here is whether due process requires any procedural minima in local zoning decisions.

The Fifth Circuit's holding with respect to the procedural question in *South Gwinnett Venture* can best be understood with reference to a prior decision, *Higginbotham v. Barrett,* 473 F.2d 745 (5th Cir. 1973). *Higginbotham* set forth a standard much like that above. 473 F.2d at 747. The zoning ordinance in *Higginbotham* had involved the adoption of a "comprehensive zoning plan," *South Gwinnett Venture* at 7; by contrast, *South Gwinnett Venture* involved a request to rezone a specific landowner's property. The panel decision in *South Gwinnett Venture,* 482 F.2d 389 (5th Cir. 1973), held that while the adoption of an overall plan represented an exercise of legislative power, a decision with respect to an individual application was an exercise of legislative power in a quasi-adjudicative setting, and that the latter required the decision-maker to afford the landowner minimal due process. *Id.* 391.

The *en banc* decision rejected this distinction. In language that could be read to exclude consideration of procedural claims in zoning cases, it said:

"[W]e see no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a piece of property under an existing plan, [citation omitted].

". . . A zoning commission is a quasi-legislative body. It is not required to make findings of fact or state the reasons for the action taken. Its actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare." *South Gwinnett Venture,* 491 F.2d at 7.

The two judges forming the panel majority dissented, and one judge concurred on the ground that the plaintiff in *South Gwinnett Venture* had in fact received minimal due process. *Id.* at 7–8. But it should be noted that the majority, in dismissing the complaint, nevertheless briefly examined the alleged procedural defect in *South Gwinnett Venture,*[13] and found it to lack constitutional stature. *Id.* at 7. Likewise, *Higginbotham,* on which the *South Gwinnett Venture* court expressly relied, also considered a procedural claim under the rubric of "arbitrariness." 473 F.2d at 748. So

---

13. The alleged procedural defect was the use of non-record, "secret" evidence in passing upon the rezoning application. 482 F.2d at 390–91.

despite the language of *South Gwinnett Venture,* it seems that a denial of minimal procedural due process in local zoning decisions may state a cause of action. *Contra, Stephens v. City of Plano,* 375 F.Supp. 985, 987 & n. 2 (E.D.Tex.1974).

 The basic elements of procedural due process are notice and an opportunity to be heard. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The facts of plaintiff's claim reveal that in every instance save one it received notice and a hearing, and only complains of violations of state law. The sole colorable federal claim arises from the alteration of the Master Plan, which plaintiff specifically alleges occurred without notice and a hearing; but since that action lacked legal consequence, the question must again be raised whether it can supply the basis for a violation. However, since it cannot be said with assurance that plaintiff could prove no set of facts entitling it to relief, this allegation withstands a motion to dismiss for failure to state a claim. See part II.E *supra.* Accordingly, the motion will be denied as to this claim, and plaintiff may pursue its procedural claim should it desire to do so.

### 3. *Equal Protection of the Laws*

 Paragraph 41 of the complaint alleges that the defendants conspired

(b) to deprive Plaintiff of the equal protection of the state and local laws governing zoning and site plan approval as they relate to Plaintiff's rights under state and local law to develop a shopping center on Plaintiff's property as proposed in "site Plan No. 1" and/or "site Plan No. 2" and to deny Plaintiff zoning and state plan approval by Planning Board, Council

and Township to which approval Plaintiff is entitled under local and state law and ordinances.

As the court understands this claim, however, it is entirely coincident with plaintiff's due process claims. Plaintiff relies upon the same contentions which, if proved, will constitute an actionable claim of denial of substantive due process of law. *See* part II.F.2(a), *supra.* Under these conditions, extended consideration of whether the same facts would constitute a denial of equal protection is unnecessary. A plaintiff may only be made whole once, no matter how many theories entitled it to recovery. *See McCarthy v. American Eastern Corp.,* 175 F.2d 727, 729 (3rd Cir. 1949), *cert. denied,* 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); *Myers v. Isthmian Lines, Inc.,* 282 F.2d 28, 29 n. 1 (1st Cir. 1960), *cert. denied,* 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 461 (1961).[14]

### G. *Damages*

 This case is unlike the usual zoning case in that plaintiff demands damages. Zoning cases antedating *Bivens v. Six Unknown Named Agents, supra* part II.A., speak of the Fourteenth Amendment as only providing a federal cause of action for equitable and declaratory relief. *E. g., Wilcox v. City of Pittsburgh,* 121 F.2d 835, 838 (3rd Cir. 1941); *Shellburne, Inc. v. New Castle County,* 293 F.Supp. 237, 245 (D.Del. 1968). The Supreme Court appears to have long recognized a damage remedy against municipalities in inverse condemnation cases from the state courts, *Damage Remedies* at 950 n. 145, and the lower federal courts have likewise in recent years entertained inverse condemnation actions. Part II.F.1, *supra.* Nevertheless, setting inverse condemnation actions aside, research discloses few federal cases in which a plaintiff has sought a damage remedy for an unconstitutional zoning ordinance.[15] The unusual

---

**14.** No party addresses, and consequently the court does not address, any claim against the Township arising under 42 U.S.C. § 1985(3) or § 1986.

**15.** *See Burns v. City of Des Peres,* text *supra,* 534 F.2d at 107. The plaintiff in *Brault v.*

*Town of Milton,* text *supra,* sought damages, but the invalidity of the zoning ordinance there arose under state law, and the case involved the additional factor of a state court injunction. For the New Jersey cases, *see* text *infra.*

posture of this case arises from plaintiff's success in invalidating the zoning action under state law, this casting the federal suit as an action solely for the supplemental remedy of damages.[16] The New Jersey courts have rejected municipal liability for damages resulting from a zoning ordinance later declared invalid under state law. *Veling v. Borough of Ramsey,* 94 N.J.Super. 459, 228 A.2d 873 (App.Div.1967); *see Visidor Corp. v. Borough of Cliffside Park,* 48 N.J. 214, 225 A.2d 105 (1966). Although the existence of a federal damage remedy for federal constitutional violations is compelled once it is agreed that municipalities can be sued directly under the Fourteenth Amendment, a zoning damage action does raise the specter of every successful state-court zoning litigant subsequently turning to federal court to obtain the damage remedy not available in state court. Such a result would be highly antithetical to the principles of comity which underlie our federal system. *Cf. Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, upon reflection this fear is unwarranted, and the action can be seen to be consistent with the policy expressed by *Bivens* while avoiding inconsistency with state practice.

■ There are several reasons why state-court zoning litigants are unlikely to turn *en masse* to the federal forum. To begin with, there is nothing indispensable about the role of a federal court in a *Bivens*-type federal constitutional damage action. The state courts are equally competent to hear cases and enforce rights deriving from the federal constitution. *E. g., Lehigh Valley Railroad Co. v. Martin,* 100 F.2d 139, 147 (3rd Cir.), *cert. denied,* 306 U.S. 651, 59 S.Ct. 593, 83 L.Ed. 1049 (1939); *Sole v. Grand Jurors,* 393 F.Supp. 1322, 1326 (D.N.J.1975); *Travel Agents Malpractice Action Corps v. Regal Cultural Society, Inc.,* 118 N.J.Super. 184, 195, 287 A.2d 4 (App.Div.), *certif. denied,* 60 N.J. 353, 289 A.2d 798 (1972); N.J. Const. Art 6, § 3, ¶ 2. There is no reason why zoning damage claims for federal constitutional violations cannot be entertained in the state courts.[17]

Moreover, plaintiff's ability to maintain its action in federal court rests upon its ability to invoke the § 1331 jurisdiction of the court. It is apparent that the $10,000 jurisdictional minimum contained in that statute will act to exclude many, if not most, zoning damage claims from federal court. Even though the instant plaintiff's demands total in the millions of dollars, a brief review of analogous doctrines from the taking cases suggests that these demands may be substantially overstated.

■ Zoning damage claims, by their nature, seem narrowly limited to effects occurring during the interim period for which the invalid restriction was in effect. The compensation for a "temporary taking" is

---

**16.** *Gaffney v. Silk,* 488 F.2d 1248 (1st Cir. 1973), followed a similar course. There a state pensioner had had his disability benefits abruptly terminated. He brought suit in the state court and won reinstatement to benefits with full back pay. He then brought suit in the federal court under § 1983, seeking damages from the town selectmen who had caused the termination, alleging a violation of his constitutional rights to notice and a hearing. The First Circuit held that the allegation of the complaint stated a cause of action. Save for the naming of the Township itself as a defendant under the Fourteenth Amendment and 28 U.S.C. § 1331, in addition to the town officials individually, *Gaffney* is on all fours with this case. The town officials, of course, could raise an immunity defense; with regard to the Township here, *see* note 18 *infra.*

**17.** *Lomarch Corp. v. Mayor of Englewood,* 51 N.J. 108, 237 A.2d 881 (1968), may foreshadow today's decision. In *Lomarch* the municipality had "frozen" plaintiff's land by means of a zoning ordinance, arresting the development of a subdivision for a period of one year, while it considered whether to reserve the land as open space. Plaintiff sued, contending that its land had been effectively taken without compensation for the one-year period. The Supreme Court of New Jersey agreed, and held that the statute implied an obligation on the part of the municipality to pay for the value of the one-year "option." *Id.* at 113–14, 237 A.2d 881. One commentator has written that *Lomarch* "gave notice to New Jersey municipalities that they would no longer be able to enact illegal zoning restrictions to 'buy time' without paying for it." L. Badler, *Municipal Zoning Liability in Damages—A New Cause of Action,* 5 Urban Lawyer 25, 45 (1973).

normally the fair rental value of the property. *E. g., United States v. General Motors Corp.,* 323 U.S. 373, 382, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Kimball Laundry Co. v. United States,* 338 U.S. 1, 7, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). And substantial authority from the taking cases seems to indicate that, when land is taken without compensation, future profits from the use of the land may not be compensable. *See, e. g., Mitchell v. United States,* 267 U.S. 341, 344–45, 45 S.Ct. 293, 69 L.Ed. 644 (1925); *R. J. Widen Co. v. United States,* 357 F.2d 988, 994, 174 Ct.Cl. 1020 (1966); *A. G. Davis Ice Co. v. United States,* 362 F.2d 934, 936 (1st Cir. 1966). These factors would appear to operate to limit any damage recovery.

Further, insofar as plaintiff complains of the denial of its zoning variance, its damage claims must necessarily focus upon the 2.1 acres of its lot for which the variance was denied. Yet several of its requests seemingly refer to the entire tract rather than solely to the 2.1-acre portion. It is, of course, true that if a portion of a tract is taken without compensation, the taking of the part may diminish the value of the remainder. *E. g., Bauman v. Ross,* 167 U.S. 548, 574, 17 S.Ct. 966, 42 L.Ed. 270 (1897); *United States v. 3,317.39 Acres of Land,* 443 F.2d 104, 105 (8th Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972). But, hewing narrowly to zoning rather than takings, it remains true that any damages which relate to the larger portion of the tract and which arise from the denial of the zoning variance would seemingly have to be proved derivatively of the 2.1 acres for which the variance was denied. Whether this rule would apply to the other events complained of by plaintiff, *e. g.,* the allegedly groundless appeal of the state court suit, and the delay of site plan approval, are novel questions. None of them are before the court at this time, and the court certainly expresses no view as to the ultimate resolution of any of them. But the point to be noted is that the $10,000 jurisdictional minimum should present a

significant hurdle for plaintiffs who wish to bring a federal constitutional damage claim in federal court. *See Hanna v. Drobnick,* 514 F.2d 393 (6th Cir. 1975); *Damage Remedies* at 960. Indeed, nothing forecloses the defendants in this case from attempting to disprove the existence of a $10,000 controversy.

But finally, regardless of the court in which the suit is brought, the most potent factor reducing the impact of constitutional zoning damage claims is that the federal and state standards for zoning cases, at least in New Jersey, are not identical. The federal standard is set forth in detail in part II.F.2(a), *supra;* it essentially requires that the zoning action be devoid of "substantial relation to the public health, safety, morals, or general welfare," *Village of Euclid v. Ambler Realty Co., supra,* as that phrase is explicated by such cases as *Village of Belle Terre v. Boraas, supra.* The state standard, of course, derives from state statutory, rather than federal constitutional, sources. As applied in the state court *Sixth Camden* case, it appears to require a three-part finding, also set forth in part II.F.2(a), *supra.* A careful examination of the standard applied there, by comparison with the federal standard, convinces this court that some "breathing room" exists between the two. Invalidation of a zoning ordinance in the state courts will by no means automatically entitle a plaintiff to federal constitutional damages. This view is consistent with the statement in *South Gwinnett Venture, supra,* that upon a factual showing of arbitrariness, justifications within the public welfare could still be shown. 491 F.2d at 7. And, of course, zoning ordinances invalidated for state procedural reasons will be completely outside the pale. For these reasons, it is extremely unlikely that damage awards against municipalities will become frequent postscripts to zoning litigation.[18]

As a practical matter, then, the current state municipal immunity from zoning damage claims will remain largely unchanged.

---

18. It should be noted that this litigation is at an early stage, and whether a municipality is entitled to an immunity or other defense is still an open question. *See Damage Remedies* at 955–58.

Potential federal constitutional liability should hardly deter a municipality from its "exercise [of zoning] power in good faith . . . when it determines the public interest so requires." *Veling v. Borough of Ramsey, supra,* 94 N.J.Super. at 461, 228 A.2d at 874. Any modest effect such potential liability exerts may prove beneficial: "[M]unicipalities . . . may respond to their new liability with enhanced awareness of their constitutional duties." *Suing Municipalities* at 796; *Damage Remedies* at 927. And municipal liability, if and when it occurs, will serve the public interest emphasized by *Bivens* in the compensation of victims of constitutional violations. 403 U.S. at 395–97, 91 S.Ct. 1999; *id.* at 407–08, 91 S.Ct. 1999 (Harlan, J., concurring).

### III. *The Township Council*

█ In addition to naming the individual members of the Township Council as defendants, plaintiff has named the Council itself, as an entity, a defendant. The Council has joined in the Township's motion.

The defendant Township is a municipal corporation of the State of New Jersey. It has adopted a Council-Manager Plan B form of government, *see* N.J.S.A. 40:69A–99 to 40:69A–103, pursuant to the provisions of N.J.S.A. 40:69A–1 et seq. The elected Council and an appointed municipal manager govern the town. N.J.S.A. 40:69A–100. It is apparent from the statutory scheme that for the purposes of a federal civil rights action there is no meaningful distinction to be made between the Township and the Council. It follows that the disposition of the Council's motion must in all regards parallel that of the Township.

This result is supported in the case law. In *United States ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84, 86 (3rd Cir. 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), a hospital which operated as part of the city government was held to share the city's non-amenability to suit under § 1983. This result certainly may be generalized both as to other entities which form parts of the city government, and as to direct actions under the Fourteenth Amendment and § 1331. Several district court decisions have specifically held governing bodies indistinguishable from their municipalities. *Kiekow v. Village of Chenequa,* 342 F.Supp. 494, 495 (E.D.Wis.1972); *Johnson v. City of Baton Rouge,* 50 F.R.D. 295, 297–98 (E.D.La.1970); *Johnson v. Hackett,* 284 F.Supp. 933, 936 (E.D.Pa.1968). And at least one court has held that although the municipality and its governing body are not "persons" within 42 U.S.C. § 1983, both may be sued under the Fourteenth Amendment and 28 U.S.C. § 1331. *Donohoe Construction Co. v. Maryland-National Capital Park & Planning Commission,* 398 F.Supp. 21, 23–24 (D.Md. 1975). These results merely confirm the view taken above. The motion on behalf of the Township Council will be disposed of in all particulars on the bases set forth with regard to the Township's motion, *supra* part II.

### IV. *The Individual Defendants*

The individual defendants, Alexander F. Antel and Estelle J. Allen, move to dismiss the complaint against them. They raise six separate contentions.

They first maintain that the court should abstain because of the pendency of the state-court actions. This argument retraces the Township's motion to dismiss on abstention grounds, *supra* part II.D of this opinion. The analysis leading to its denial there applies equally well here, and it need not be repeated. Likewise, the contention that property rights do not lie within the scope of coverage of § 1983 has been adequately covered in part II.C, *supra,* and does not merit further discussion. But certain of the additional grounds raised by these defendants do require discussion, and each will be taken up in sequence.

### A. *Color of State Law*

█ A necessary predicate to a cause of action under 42 U.S.C. § 1983 is that the defendants act "under color of" state law. 42 U.S.C. § 1983; *e. g., Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Jackson v. Metropolitan Edison Co.,*

419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Phillips v. Trello,* 502 F.2d 1000, 1004 (3rd Cir. 1974). The complaint names the individual defendants only as private citizens. (Complaint, ¶¶ 16.1, 16.2). In *Phillips v. Trello, supra,* as here, the complaint alleged a conspiracy between private citizens and other defendants who concededly had acted under color of state law. That case accurately states both the argument advanced by the private citizens and its rebuttal:

> "They contend . . . that since they are citizens holding no official capacity, they cannot be regarded as having acted 'under color of' state law. But the law has long been settled that when two or more persons conspire to violate the civil rights of another, if one or more of the conspirators is a state officer acting under color of state law, then the mere fact that other conspirators are not state officers is no defense to them in a suit under the Civil Rights Act. *E. g., Adickes v. Kress & Co.,* 398 U.S. 144, 152 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970); [further citations omitted]." 502 F.2d at 1004.

*See also United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966):

> "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." (footnote omitted)

Thus the fact that the individual defendants did not act under color of state law is not by itself sufficient reason for dismissal.

### B. *Pleading of Conspiracy*

■ The individual defendants next contend that the conclusory allegations of conspiracy in the complaint are insufficient to state a cause of action.

The Third Circuit recently considered the subject of pleading in civil rights actions, and reaffirmed its prior precedent:

> "In this circuit, plaintiffs in civil rights cases are required to plead facts with specificity. *Kauffman v. Moss,* 420 F.2d 1270, 1275–76 (3rd Cir.), *cert. denied,* 400 U.S. 846, [91 S.Ct. 93, 27 L.Ed.2d 84] (1970); *Negrich v. Hohn,* 379 F.2d 213 (3rd Cir. 1967)." *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3rd Cir. 1976) (footnote omitted).

The court went on to explain the basis for the rule:

> "The rationale of the *Negrich* requirement that facts be specifically averred was outlined in *Valley v. Maule,* 297 F.Supp. 958 (D.Conn.1968), and was quoted approvingly in *Kauffman v. Moss, supra,* at 1276 n. 15:
>
>> In recent years there has been an increasingly large volume of cases brought under the Civil Rights Act. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants—public officials, policemen and citizens alike, considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims." *Id.*

The complaint at bar falls decisively within the *Rotolo-Negrich* rule. It contains seventeen pages of factual and legal allegations; yet aside from the paragraphs stating the names and addresses of the individual defendants, it is altogether bereft of any reference to their activities. The conclusory charge of conspiracy in paragraph 41 of the complaint serves as the sole allegation which implicates these defendants at all. Under *Rotolo,* such a complaint is inadequate.

Plaintiff replies, essentially, that since it has alleged specific acts on the part of other defendants, its allegation of conspiracy should make those acts attributable to the individual defendants; or, alternatively, that its allegation of conspiracy should entitle it to discovery to flesh out its charges. But this response overlooks the fact that the allegation of conspiracy is itself conclusory and unsupported. No less than for any

other legal conclusion, plaintiff must plead some facts indicating participation in the conspiracy by the defendants. *Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir. 1975); *Dieu v. Norton,* 411 F.2d 761, 763 (7th Cir. 1969); *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2nd Cir. 1964); *compare Bethea v. Reid,* 445 F.2d 1163, 1165 (3rd Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *see also* part II.E, *supra.* Absent any factual allegations to support the charge of conspiracy, *Rotolo* inexorably requires dismissal of this complaint against these defendants. 532 F.2d at 922–23. This disposition applies to claims under § 1983, *Rotolo, supra;* under 42 U.S.C. § 1985(3),[19] *Fletcher v. Hook,* 446 F.2d 14, 15–16 (3rd Cir. 1971); *Scott v. University of Delaware,* 385 F.Supp. 937, 944 (D.Del.1974), and under the Fourteenth Amendment, for the reasons stated in part II.A, *supra.* It goes without saying that plaintiff may freely obtain leave to amend its complaint within a reasonable time. F.R.Civ.P. 15(a); *Rotola, supra,* at 923.

## C. *Other Grounds*

The dismissal of the complaint against the individual defendants for pleading deficiencies makes extended consideration of their other grounds for dismissal unnecessary. However, a few words should be addressed to these grounds, since to sustain one of them, in particular, would render amendment of the complaint ineffectual.

The defendants urge two additional grounds for dismissal. The defendants concede that a cause of action under 42 U.S.C. § 1985(3) reaches private parties not acting under color of state law, as they must. *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). But *Griffin* also requires:

> "That there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798 (footnote omitted).

The defendants contend that there is not, and cannot be, any motivation on their part

sufficient to satisfy this requirement. Finally, they maintain that their activities amount to no more than petitioning the government for redress of grievances, and that the First Amendment to the United States Constitution consequently shields them from civil liability. For this latter point they cite *Sierra Club v. Butz,* 349 F.Supp. 934 (N.D.Cal.1972). This abbreviated statement barely hints of the extensive briefing that has raged on each side of these issues.

■■■ However, without allegations of specific conduct, it is impossible to evaluate the validity of either of these positions. As *Rotolo, supra,* itself said:

> "The allegations [of] the complaint . . fail to indicate, when, [where] and how Rotolo had 'exercised his First Amendment privileges,' rendering it impossible to determine if indeed his activity was the sort afforded protection under the first amendment . . . . The allegations state no facts upon which to weigh the substantiality of the claim . . ." 532 F.2d at 923 (footnote omitted).

The Third Circuit has recently reminded us that constitutional issues should not be decided on less than a full record. *Hazo v. Geltz,* 537 F.2d 747 (3rd Cir. 1976), slip opinion at 8. The factual vacuum in this case simply precludes resolution of these potentially complex issues at this time. The complaint against the individual defendants will therefore stand dismissed but will remain subject to amendment within a reasonable time.

Counsel for plaintiff and for the individual defendants are to prepare and submit appropriate orders.

---

19. And consequently 42 U.S.C. § 1986. *Brawer v. Horowitz,* 535 F.2d 830, 841 (3rd Cir. 1976).